NATIONAL COUNCIL ON COMPENSA-
TION INSURANCE, Plaintiff–Appellee,

v.

Horace E. GADDIS, Jr., Commissioner–
Designate, Tennessee Department of
Commerce and Insurance, Defendant,

and

Shoney's, Inc., Defendant–Appellant.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Aug. 16, 1989.

Permission to Appeal Denied by
Supreme Court March 5, 1990.

Lawrence C. Maxwell and Mary Thomson LeMense, Trabue, Sturdivant & DeWitt, Nashville, for defendant-appellant, Shoney's, Inc.

Foster D. Arnett and Dan D. Rhea, Arnett, Draper & Hagood, Knoxville, for plaintiff-appellee, Nat. Council on Compensation Ins.

OPINION

FRANKS, Judge.

Shoney's has appealed from a chancery court judgment which reversed the commissioner's determination that Shoney's was "eligible for inclusion into 'assigned risk pool' on a guaranteed cost basis".

The Tennessee Department of Commerce and Insurance had reversed the National Council on Compensation Insurance ruling that Shoney's could not participate in NCCI's assigned risk plan on a guaranteed cost premium basis and NCCI petitioned the Chancery Court of Davidson County for a review of that determination pursuant to the Uniform Administrative Procedures Act, T.C.A., § 4–5–322.

In chancery court, the chancellor identified the determinative issue as being:

The issue in this case is whether Shoney's was eligible for inclusion in NCCI's assigned risk plan.

The commissioner had determined:

In seeking guaranteed cost workers' compensation insurance for the 1985–1986 policy year, Shoney's contacted in excess of twenty-five (25) insurance carriers, including Continental. At least two carriers, the Northbrook Insurance Company and the Aetna Life and Casualty Company, declined to provide Shoney's with workers' compensation insurance on any basis. All of the remaining carriers, including Continental, refused to provide Shoney's with workers' compensation insurance, standing alone, on a guaranteed cost basis. Although one insurance carrier did offer a multiple lines proposal (which included workers' compensation, auto and general liability and casualty) on a guaranteed cost basis; however, that carrier also refused to provide solely workers' compensation on a guaranteed cost basis. According to the NCCI, such a multiple lines proposal would not bar admission to the assigned risk plan.

The chancellor's response to this fact finding was:

The fundamental and underlying purpose and intention of the assigned risk plan is to provide an insurance market of last resort. It is not to be used in competition with the voluntary market. The plan allows employers who, for whatever reason, are unable to obtain worker's compensation insurance to obtain coverage so they may stay in business. This is clearly not Shoney's situation.

Shoney's received several retrospective premium quotations. The fact Shoney's could not get guaranteed cost premiums does not make it eligible for the assigned risk plan. The plan was not intended to guarantee the availability of coverage required by the worker's compensation law. Shoney's had insurance available to it on the open market and is, therefore, not eligible for inclusion in NCCI's assigned risk plan.

Shoney's filed an application to the Tennessee Workers' Compensation Insurance Plan in the Birmingham office of NCCI on April 13, 1985. The NCCI bound the coverage pursuant to Shoney's application with the American Insurance Company, a member of the Fireman's Fund Group. The premium was to be based on guaranteed rates as prescribed by the NCCI and its respective bureau. Continental learned of the assignment and complained to the NCCI. Subsequently, the NCCI revoked the binder stating, in the words of the administrator, "that Shoney's could remain in the plan, ... [but] Shoney's workers compensation insurance would be written on the retrospective basis outlined in Continental's proposal that it had quoted in the voluntary market."

The commissioner filed findings of fact and concluded:

Because Shoney's was in good faith entitled to insurance required under the workers compensation laws of Tennessee and was unable to secure such insurance in the regular manner, Shoney's was eligible for admission to the assigned risk plan based upon the application that was submitted and approved by the NCCI.

The parties dispute whether the commissioner should have employed T.C.A. § 56–5–314(b)(4)[1], in reviewing Shoney's complaint, as the chancellor ruled, or T.C.A. § 56–5–309(b)[2] which was cited by

---

1. T.C.A. § 56–5–314. *Joint underwriting, pools, and residual market mechanisms.*

. . . . .

(b) REGULATION.

. . . . .

(4) If, after a hearing, the commissioner finds that any activity or practice of insurers participating in joint underwriting, pool or residual market mechanisms is unfair, unreasonable or otherwise inconsistent with the provisions of this part, the commissioner shall issue a written order specifying in what respects such activity or practice is unfair, unreasonable or otherwise inconsistent with the provisions of this part and require the discontinuance of such activity or practice.

2. T.C.A. § 56–5–309. *Information for insureds—Review for aggrieved persons.*

. . . . .

(b) AGGRIEVED PERSONS. Every insurer and rate service organization shall provide within this state reasonable means whereby any

the commissioner. While the choice is not necessarily dichotomous, the commissioner's application of T.C.A. § 56–5–309(b) under the circumstances was proper.

NCCI is undisputably a rating service organization and Shoney's was expressly held to be a person aggrieved by NCCI's conduct. On appeal, NCCI seems to argue that § 309(b) applies only to rate appeals and this appeal is not a rate dispute *per se* but of the "activities" of insurers participating in the residual market mechanism covered specifically by § 314(b)(4). We cannot agree. First, § 309(b) applies not only to rates but the "application" of the "rating system". Clearly, forcing an insured to accept coverage on the condition of paying a retrospective rate versus a guaranteed cost premium is an "application of [a] rating system" within the meaning and contemplation of the statute. Moreover, § 314 at (b)(1) provides: "Except to the extent modified by this section, insurers participating in joint underwriting, pool or residual market mechanisms are subject to the other provisions of this part." Where a statute is subject to construction, we accord persuasive weight to administrative interpretations. *Estrin v. Moss*, 221 Tenn. 657, 430 S.W.2d 345 (1968).

The cases interpreting the Uniform Act make it clear that neither the trial court nor an appellate court may review issues of fact *de novo* or substitute the court's judgment for that of the agency. This rule applies with greater force when the issues require scientific or technical proof because the courts have neither the expertise nor the resources to evaluate such issues *de novo* and generally defer to agency decisions on highly technical matters. *Wayne Cty. v. Tennessee Solid Waste Dis. Cont.*

*Bd.*, 756 S.W.2d 274 (Tenn.App.1988). However, the "substantial and material evidence standard" of T.C.A. § 4–5–322(h)(5) requires a searching and careful inquiry and subjects the agency's decision to close scrutiny.

NCCI insists the chancellor, by interpreting the statute, was addressing a question of law. Further, the commissioner made no findings of fact on the purpose of the assigned risk plan and the chancellor was therefore free to make such findings.

■ The substantive issues raised by Shoney's complaint before the commissioner were whether Shoney's was eligible to participate in the assigned risk plan and, if so, could NCCI mandate retrospective rate premiums in lieu of the guaranteed cost premium. The chancellor, however, stated the sole issue was eligibility and Shoney's inability to obtained guaranteed cost coverage, rather than retrospective rate coverage, did "not make it eligible for the assigned risk plan". With deference to the chancellor, it is undisputed that Shoney's was entitled to participate in the plan if if was "unable to secure such insurance in the regular manner." Thus, the determinative issue was whether the inability of Shoney's to obtain insurance on a guaranteed cost basis rather than a retrospective rate basis constituted an inability to obtain insurance "in the regular manner" as provided in the plan or "through ordinary methods" as provided by statute.[3]

There is no statutory, regulatory or case definition called to the attention of this court as to what constitutes obtaining insurance "in the regular manner" or "through ordinary methods". The question is one of fact for determination by the

person aggrieved by the application of its rating system may be heard on written request to review the manner in which such rating system has been applied in connection with the insurance afforded. If the insurer fails to grant or reject such request within thirty (30) days, the applicant may proceed in the same manner as if the application had been rejected. Any party affected by the action of such insurer on such request, may within thirty (30) days after written notice of such action appeal to the commissioner who, after a hearing held upon not less than ten (10) days written notice to the appel-

lant and to such insurer, may affirm, modify, or reverse such action.

**3.** T.C.A. § 56–5–302. *Definitions.*

.    .    .    .    .

(i) "Residual market mechanism" means an arrangement, either voluntary or mandated by law, involving participation by insurers in the equitable apportionment among them of insurance which may be afforded applicants who are unable to obtain insurance through ordinary methods.

commissioner. *See* 73A C.J.S. *Public Administrative Law and Procedure* § 230; 2 Am.Jur.2d *Administrative Law* §§ 665 and 669.[4]

As noted, the commissioner made no findings of fact on this issue but merely stated the conclusion *i.e.*, that Shoney's "was unable to secure such insurance in the regular manner" and, where the administrative agency has failed to make an adequate fact finding, the Tennessee Supreme Court has observed, quoting Justice Douglas in *Baltimore & O.R. Co. v. Aberdeen & R.R. Co.*, 393 U.S. 87, 89 S.Ct. 280, 21 L.Ed.2d 219 (1968):

> The requirement for administrative decisions based on substantial evidence and reasoned findings—which alone make effective judicial review possible—would become lost in the haze of so-called expertise. Administrative expertise would then be on its way to becoming 'a monster which rules with no practical limits on its discretion.' 393 U.S. at 92, 89 S.Ct. at 283, 21 L.Ed.2d at 224.

*Levy v. State Bd. of Examiners Etc.*, 553 S.W.2d 909, 911–12 (1977).

On this record, this court cannot say whether the commissioner's ruling was an abuse of discretion or based upon fact and reason.

Accordingly, this case is remanded to the Chancery Court of Davidson County for the entry of an order of remand to the commissioner, with instructions to further consider Shoney's eligibility for participation in the assigned risk plan and make findings of fact to support his reasons and conclusions of law in accordance with the Administrative Procedures Act, T.C.A. § 4–5–101 *et seq.*

The cost incident to the appeal is assessed to the appellee.

TODD, P.J., and KOCH, J., concur.

---

**4.** NCCI's treatment of the application demonstrates the factual dispute. The manager for NCCI's southeastern regional office initially concluded that "the retro plan did not bar coverage through the assigned risk plan based on the voluntary coverage requirement of ... the assigned risk plan."