ESTATE OF Gordon P. STREET, et al., Plaintiffs/Appellants,

v.

STATE BOARD OF EQUALIZATION, et al., Defendants/Appellees.

Court of Appeals of Tennessee, Western Section, at Nashville.

Sept. 14, 1990.

Application for Permission to Appeal Denied by Supreme Court Dec. 3, 1990.

John P. Gaither, Hugh J. Moore, Jr., Douglas E. Peck, Hilda H. King, Witt, Gaither & Whitaker, Chattanooga, for plaintiffs/appellants.

Charles W. Burson, Atty. Gen. and Reporter, Daryl J. Brand, Asst. Atty. Gen., Nashville, for defendants/appellees.

FARMER, Judge.

This appeal involves the date of death valuation of certain restricted stock owned by the decedent Gordon P. Street. The Estate of Mr. Street challenged the Assessment Appeals Commission valuation of decedent's stock in the Chancery Court for Davidson County. The Chancellor upheld the Commission's findings except for the dollar valuation which he found to be arbitrary and not substantiated by sufficient evidence. The case was remanded to the Commission for further proceedings on the sole issue of actual dollar value of decedent's stock.

On Mr. Street's death he owned 62.8 percent of the issued and outstanding shares of North American Royalties, Inc. ("NAR"). The minority shares of NAR's common stock, equivalent to 37.2 percent, are publicly traded on the American and Pacific Stock Exchanges. The Tennessee Department of Revenue ("Department") valued Mr. Street's stock at $13.50 per share for inheritance tax purposes. The Department's valuation included a control premium of 50 percent over market price of the NAR publicly traded stock. The Department felt the control premium would reflect the influential factor that a controlling majority shareholder would have on NAR.

Mr. Street's estate, on the other hand, had assessed the value of the stock at $7.00 and $7.40 per share. The Appellant valued the stock between 20 to 25 percent below the publicly-traded stock in order to reflect the restrictions placed on the sale of such stock, the discount associated with the sale of a large block of stock, and problems with liquidity and marketability of the stock.

On April 2, 1986, the Appellant filed an appeal with the State Board of Equalization challenging the Department's appraisal. The Board of Equalization referred the matter to the Assessment Appeals Commission ("Commission") for determination. On May 24, 1988, the Commission concluded that (1) private placement is the proper basis to value decedent's stock; (2) the value of the decedent's NAR stock should at least be the market value of the publicly traded NAR shares; (3) the valuation of the decedent's shares should include a control premium; and (4) the value of the decedent's stock should be set at a value of $10.45 per share.

The Appellant appealed the Commission's findings, claiming error in the valuation of decedent's stock at $10.45 and in the information the Commission relied on to reach its conclusion. The trial court entered the following order on September 19, 1989:

This matter, involving the valuation of certain stock for inheritance tax purposes, was heard by the Court, pursuant to T.C.A. § 4-5-322, on appeal from the decision of the Assessment Appeals Commission of the State Board of Equalization. Upon consideration of the entire record of the proceedings before the Commission, and the briefs and argu-

ments of counsel, the Court announced findings of fact and conclusions of law in a Memorandum, filed September 5, 1989, which is hereby incorporated by reference. In accordance with the findings and conclusions set forth in that Memorandum, it is hereby

ORDERED, ADJUDGED and DECREED, that (1) the Commission's findings (a) that private placement is the correct basis for valuing decedent's stock, (b) that the fair market value of the shares of stock on the date of death would not be less than the value of the actively traded shares on that date, and (c) that the fair market value of the decedent's shares on the date of death should include a premium for control, are AFFIRMED;

(2) The Commission's assignment of $10.45 per share as the taxable value of decedent's stock was arbitrary and not substantiated by sufficient evidence;

(3) This matter is REMANDED to the Assessment Appeals Commission for further proceedings on the sole issue of the precise dollar-value to be placed on the decedent's stock....

The essence of the issues presented by the Estate are:

I. Did the trial court err in holding that a control premium should be included in the valuation of the decedent's stock and that that date of death valuation should not be less than the fair market value of the minority shares?

II. Did the trial court err in concluding that the exclusions of the Shearson Lehman report was harmless error?

III. Did the trial court err in accepting the Commission's reliance on the State's appraisal report?

## I.

Appellant contends that the Chancellor erred in concluding that a control premium should be considered in the valuation of decedent's stock. Appellant argues that this control premium fails to take into consideration the factors which negatively impact on decedent's stock. The Appellant also alleges that the "floor" the Commis-

sion placed on the decedent's shares is without merit because it inappropriately assumes an unjustified correlation between the minority unrestricted publicly traded shares and the decedent's restricted shares.

We believe the Chancellor was correct in upholding the Commission's findings. In reviewing the Commission's determinations, the Chancellor was governed by T.C.A. § 4–5–322(h). This code provision sets forth the standard of review on appeal of administrative proceedings and provides as follows:

(h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5) Unsupported by evidence which is both substantial and material in the light of the entire record.

In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

The scope of review in this Court is the same as in the trial court, to review findings of facts of the administrative agency upon a standard of substantial and material evidence. *Humana of Tennessee v. Tennessee Health Facilities Commission*, 551 S.W.2d 664 (Tenn.1977); *DePriest v. Puett*, 669 S.W.2d 669 (Tenn.App.1984). What amounts to "substantial and material evidence" as contained in T.C.A. § 4–5–322(h) is not clearly defined in the statute. Generally, the standard requires "something less than a preponderance of the evi-

dence," *Wayne County v. Tennessee Solid Waste Disposal Control Board,* 756 S.W.2d 274, 280 (Tenn.Ct.App.1988); *Consolo v. Federal Maritime Comm'n,* 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966), "but more than a scintilla or glimmer." *Wayne County,* 756 S.W.2d at 280; *Pace v. Garbage Disposal Dist.,* 54 Tenn.App. 263, 267, 390 S.W.2d 461, 463 (1965).

█ In the proceeding before the Commission on November 18 and 19, 1987, both the Appellant and Appellee introduced expert testimony in support of their position. Mr. Street's estate presented testimony by Shearson, Lehman Brothers, Inc., ("Shearson") an investment banking firm, and Associated Valuation Technologies, Inc., ("Associated") an appraisal firm. The Estate's experts testified that a discount instead of a premium should be considered in valuing the decedent's stock. Shearson and Associated concluded that a discount was appropriate because strict security laws limited the liquidity and marketability of the NAR unregistered restricted stock.

The State, on the other hand, presented the testimony and appraisals of Eugene Jones, an estate tax auditor, and a representative of Marshall and Stevens, Inc. an appraisal firm. The State's experts testified that a "control premium," over and above the value of the minority shares, should be reflected in the valuation since the decedent had effective control of a prosperous business through the ownership of 62.8 percent of the common stock.

It is apparent, in light of the expert testimony presented at the hearing before the Commission, that the Commission's decision regarding the "floor" and the control premium are both supported by "substantial and material evidence" in accordance with T.C.A. § 4–5–322(h).

The basic rules that govern appellate review of an agency's factual determinations are applied with significant force when resolution of the issues require technical or scientific evidence. Appellate courts do not have the necessary expertise or the available resources to conduct *de novo* reviews of difficult scientific issues. *National Council on Compensation Insurance v. Gaddis,* 786 S.W.2d 240, 242 (Tenn.Ct.App. 1989); *Wayne County,* 756 S.W.2d at 280; *Thompson Medical Co. v. FTC,* 791 F.2d 189, 196 (D.C.Cir.1986); *cert. denied,* 479 U.S. 1086, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987). When very complex areas of expertise are at issue, courts normally defer to the agency's determinations. *National Council on Compensation Insurance,* 786 S.W.2d at 242; *Wayne County,* 756 S.W.2d at 280.

Appellant would have this Court weigh the conflicting expert testimony. However, "when conflicts in expert testimony arise, it is the agency's prerogative to resolve them, not the court's." *Wayne County,* 756 S.W.2d at 281; *Webb v. Gorsuch,* 699 F.2d 157, 160 (4th Cir.1983).

Therefore, we conclude that a reversal or modification of the Commission's findings in light of the above-mentioned standard is not merited.

## II.

█ Appellant next contends that the Chancellor erred in concluding that the Commission's wrongful exclusion of the Shearson Lehman report was harmless error. The Commission excluded the report under the mistaken fact that one of the directors of NAR was also a director of Shearson Lehman. The Chancellor held that the Commission erred in excluding the Shearson Lehman appraisal report but that the error was harmless. The Chancellor's memorandum notes that since the Commission accepted the findings of the appraisal prepared by Associated Valuation Technologies, which was prepared for the Appellant and drew the same pertinent conclusions favorable to the Appellant as the Shearson Lehman report, any mistake the Commission made in rejecting the Shearson Lehman appraisal constituted harmless error. Upon reviewing the reports, we agree with the Chancellor. Appellant contends that the Shearson Lehman report "proceeded from a well-grounded practical background" resulting from years of experience in similar placements whereas the report of Associated used a theoretical approach. However, Appellant's argument fails to point out how these reports differ.

T.C.A. § 4-5-322(i) provides that "[n]o agency decision pursuant to a hearing in a contested case shall be reversed, remanded, or modified by the reviewing court unless for errors which affect the merits of the decision complained of."

The Chancellor concluded, and we agree, that the error was a harmless error. The relief sought by Appellant with respect to this issue is that this Court require the Commission on remand to give full and unbiased consideration to the Shearson Lehman appraisal. However, since it was error to exclude the report, the Appellant will be free to introduce the Shearson Lehman report to determine the remaining issue on remand, which is the exact dollar amount of the stock valuation.

### III.

Finally, the trial court did not err in accepting the Commission's reliance on the State's appraisal reports. The Appellant alleges that the Commission relied on two appraisals offered by the State which were based on improper and/or irrelevant information.

■ It is the agency's role to examine the credibility, demeanor, expertise, and knowledge of the expert witness, and the agency is afforded wide discretion in deciding the appropriate amount of weight and merit which should be afforded to each. *Wayne County*, 756 S.W.2d at 281. The courts are bound by a narrow scope of review on administrative appeals, rather than the broader standard for civil appeals. *CF Indus. v. Tennessee Pub. Serv. Comm'n*, 599 S.W.2d 536, 540 (Tenn.1980); *Metropolitan Gov't of Nashville v. Shacklett*, 554 S.W.2d 601, 604 (Tenn.1977); *DePriest v. Puett*, 669 S.W.2d 669, 673 (Tenn. Ct.App.1984), *cert. denied*, 469 U.S. 1034, 105 S.Ct. 505, 83 L.Ed.2d 397, *reh. denied*, 469 U.S. 1181, 105 S.Ct. 942, 83 L.Ed.2d 954 (1985). The courts are not allowed to weigh the factual evidence and substitute their judgment and conclusions for that of the administrative agency, *Wayne County*, 756 S.W.2d at 279; *Humana of Tennessee v. Health Facilities Comm'n*, 551 S.W.2d 664, 667 (Tenn.1977); *Grubb v. Tennessee Civil Service Comm'n*, 731 S.W.2d 919, 922 (Tenn.Ct.App.1987) even if the proof were to support a different determination than that of the agency. *Wayne County*, 756 S.W.2d at 281; *Hughes v. Board of Comm'rs*, 204 Tenn. 298, 305, 319 S.W.2d 481, 484 (1958). A court will not disturb a reasonable decision of an agency if there is "such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration." *Southern Ry. v. State Bd. of Equalization*, 682 S.W.2d 196, 199 (Tenn. 1984); *Sweet v. State Technical Inst.*, 617 S.W.2d 158, 161 (Tenn.Ct.App.1981).

Upon considering the record according to this standard of review, we agree with the conclusion of the trial court that the agency's determination to accept the State's appraisal reports is supported by both "substantial and material" evidence.

For all the foregoing reasons the judgment of the trial court is affirmed and this cause is remanded to the Commission for further proceedings as to the actual dollar amount of the decedent's stock. Costs of this appeal are taxed to the appellant for which execution may issue if necessary.

CRAWFORD and HIGHERS, JJ., concur.