# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

| | | |
|---|---|---|
| JAMES PRICE, | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | |
| | ) | Davidson Chancery |
| | ) | No. 94-186-I |
| VS. | ) | |
| | ) | Appeal No. |
| | ) | 01A01-9508-CH-00336 |
| TENNESSEE CIVIL SERVICE | ) | |
| COMMISSION, | ) | |
| | ) | |
| Defendant/Appellee. | ) | |

FILED

April 25, 1997

Cecil W. Crowson
Appellate Court Clerk

APPEAL FROM THE CHANCERY COURT FOR DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE IRVIN H. KILCREASE, JR., CHANCELLOR

For the Plaintiff/Appellant:

J. Ronnie Greer
Greeneville, Tennessee

For the Defendant/Appellee:

Charles W. Burson
Attorney General and Reporter

James C. Floyd
Assistant Attorney General

## AFFIRMED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# MEMORANDUM OPINION

This appeal involves an employee of the Tennessee Department of Mental Health and Mental Retardation who was terminated for using excessive force against a resident at Green Valley Development Center. The employee filed a petition for judicial review in the Chancery Court for Davidson County alleging that the Civil Service Commission's decision to uphold his termination was not supported by substantial and material evidence. The trial court affirmed the Commission's termination order, and the employee has perfected this appeal. We have determined that the decision to terminate the employee is supported by substantial and material evidence and, therefore, affirm the trial court in accordance with Tenn. R. App. P. 10(b).[1]

## I.

James Price went to work for the Department of Mental Health and Mental Retardation ("DMHMR") in 1977 as a developmental technician at Green Valley Developmental Center. Prior to July 1994, he was assigned to the Maple Outward Bound section of Maple Cottage where he was directly responsible for eight mildly retarded boys between ten and thirteen years of age. These residents were among the most physically difficult residents at Green Valley. Most of them had behavior problems requiring restraint at one time or another.

Even though Mr. Price was on annual leave for most of July 1991, he went to Maple Cottage on July 4, 1991 to complete some paperwork. While Mr. Price was at Maple Cottage, one of his charges, Ricky M., had a violent tantrum that required Mr. Price and Mark Carter, another developmental technician, to enter

---

[1] Tenn. R. App. P. 10(b) provides:

> The Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in a subsequent unrelated case.

his room and restrain him. While Mr. Carter was holding Ricky M.'s legs, Mr. Price struck the side of Ricky M.'s head with his fists "once or twice." Ricky M. stopped struggling soon after Mr. Price struck him. Mr. Carter did not notice that Ricky M. was injured and did not report the incident to his supervisor.

Mr. Price left Green Valley at 11:00 p.m. after the shift changed. Later that evening, Ricky M. began banging on doors and told Mark Shelton, another developmental technician, that Mr. Price and Mr. Carter had beaten him. Mr. Shelton contacted his supervisor when he observed a bump on the side or Ricky M.'s head and blood trickling from one of his ears. The supervisor immediately summoned a nurse, a doctor, and the Assistant Superintendent for Residential Services. They took pictures of Ricky M.'s injuries, and Ricky M. repeated that Mr. Carter had held him down and that Mr. Price had hit him on the side of the head.

Dr. Robert G. Erb, Green Valley's Superintendent, recalled Mr. Carter to the facility on the night the incident took place. He informed Mr. Carter that employees who observe abuse but fail to report it were subject to termination. Mr. Carter admitted that he and Mr. Price had restrained Ricky M. but denied at first that any abuse had taken place. After being warned again that he would "go down the tube" with Mr. Price if he did not tell the truth, Mr. Carter recanted his earlier statements and admitted that Mr. Price had struck Ricky M. in the head. He also stated that he was afraid of what Mr. Price might do to him if he did not cover up the incident.[2]

Representatives of the DMHMR and the Department of Human Services interviewed Mr. Price on the day after the incident. When questioned about a bruise on the knuckles of his right hand, Mr. Price, who was right-handed, could not explain how he bruised his knuckles. He also stated that he, Mr. Carter, and Jeff Keller had been required to restrain Ricky M. and that he had not struck Ricky M. during this incident. Mr. Price conceded that Ricky M. sustained a bloody

---

[2]Mr. Carter received a one-day suspension for failing to report an incident of abuse.

-3-

nose during the incident and admitted that he had not reported the incident or the injury.

Green Valley officials determined that Mr. Price had violated departmental regulations prohibiting brutality.[3]  Following a due process hearing on July 11, 1991, Green Valley notified Mr. Price on July 12, 1991, that he was terminated immediately.  Mr. Price appealed his termination to the Civil Service Commission after exhausting his grievance remedies within the DMHMR.  The Commission assigned the case to an administrative law judge who entered an initial order on February 1, 1993 finding that the evidence supported Mr. Price's termination.  The Commission entered a final order on November 23, 1993 adopting the administrative law judge's initial order.  Mr. Price filed a petition for judicial review of the Commission's decision in the Chancery Court for Davidson County.  On May 22, 1995, the trial court entered an order affirming the Commission's decision on the ground that it was supported by substantial and material evidence.  This appeal followed.

## II.

The only issue that Mr. Price raises on this appeal is that the Commission's decision to uphold his termination is not supported by evidence which is both substantial and material in light of the entire record.  He insists that the DMHMR, the administrative law judge, and the Commission erred by believing Ricky M. and Mr. Carter rather than him and Mr. Keller.  Parties who challenge credibility determinations in administrative proceedings, like parties who take issue with credibility determinations in judicial proceedings, shoulder a heavy appellate burden.

---

[3]Tenn. Comp. R. & Regs. r. 0940-2-3-.03(a) & (c) (1983) state that DMHMR employees shall not "[k]nowingly threaten to touch, attempt to touch, or actually touch a resident or patient in any manner which a reasonable person would recognize as likely to be harmful or painful or to cause mental anguish" or "[k]nowingly engage in any conduct toward a resident or patient which a reasonable person would recognize as brutal or cruel under the circumstances."  The rule also states that "[i]f an employee engages in conduct prohibited by this rule, the employee is guilty of conduct against the good of the service, and the employee shall be dismissed.  Such a violation is most likely to be determined to be gross misconduct."

Trial and appellate courts employ the same standard when called upon to review the evidentiary foundation of a final administrative order. *Estate of Street v. State Bd. of Equalization,* 812 S.W.2d 583, 585 (Tenn. Ct. App. 1990). The substantial and material evidence standard of review in Tenn. Code Ann. § 4-5-322(h)(5) (Supp. 1996) does not permit the courts to reweigh the evidence or to substitute their judgment for that of the administrative fact-finder. *McClellan v. Board of Regents,* 921 S.W.2d 684, 693 (Tenn. 1996); *Sanifill of Tenn., Inc. v. Tennessee Solid Waste Disposal Control Bd.,* 907 S.W.2d 807, 810 (Tenn. 1995). Rather, it requires the courts to review the administrative record to determine whether the agency's decision is based on the sort of relevant evidence that a reasonable person would accept to support a rational conclusion or to furnish a reasonably sound basis for the action under consideration. *Southern Ry. v. State Bd. of Equalization,* 682 S.W.2d 196, 199 (Tenn. 1984).

Credibility determinations based on a witness's demeanor are particularly within the province of administrative finders-of-fact. *See* 1 Charles H. Koch, *Administrative Law and Practice* § 6.54A, at 290 (Supp. 1997). Accordingly, reviewing courts customarily give great weight to credibility determinations based on the fact-finder's opportunity to observe the witnesses as they testify. 2 Kenneth C. Davis & Richard J. Pierce, Jr., *Administrative Law Treatise* § 11.2, at 183-84 (3d ed. 1994); 2 Charles H. Koch, *Administrative Law and Practice* § 9.16, at 204 (Supp. 1997).

We have carefully reviewed the administrative record and find no basis to second-guess the administrative law judge's decision that Mr. Carter's version of the July 4, 1991 incident was more credible that the version of Mr. Price and Mr. Keller.[4]  In our opinion, Mr. Carter's testimony, coupled with both the physical evidence concerning Ricky M.'s condition and the bruises on Mr. Price's right hand, provide substantial and material evidence to support the Commission's decision to uphold the DMHMR's decision to terminate Mr. Price.

**III.**

_____

[4]The administrative law judge gave little weight to Ricky M.'s version of the incident because of his history of lying about similar incidents.

-5-

We affirm the trial court's order upholding the termination of Mr. Price from state employment and remand the case to the trial court for whatever further proceedings may be required. We also tax the costs to James Price and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:

_____
SAMUEL L. LEWIS, JUDGE

_____
BEN H. CANTRELL, JUDGE