# IN THE COURT OF APPEALS OF TENNESSEE

**FILED**

**July 29, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

| | |
|---|---|
| **KRISTEN TATUM and JULIE DURR,** ) | |
| ) | |
| Petitioners/Appellants, ) | **Davidson Chancery No. 95-3910-III** |
| ) | |
| **VS.** ) | **Appeal No. 01A01-9707-CH-00326** |
| ) | |
| **THE UNIVERSITY OF TENNESSEE,** ) | |
| ) | |
| Respondent/Appellee. ) | |

APPEAL FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE
THE HONORABLE ELLEN HOBBS LYLE, CHANCELLOR

**JOHN D. AGEE**
**COOLEY, COOLEY & AGEE**
Kingston, Tennessee
Attorney for Appellant

**BEAUCHAMP E. BROGAN**
**GENERAL COUNSEL**
**THE UNIVERSITY OF TENNESSEE**
Knoxville, Tennessee
Attorney for Appellee

**AFFIRMED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**

The University of Tennessee at Knoxville ("University") found the appellants, Kristen Tatum ("Tatum") and Julie Durr ("Durr") (collectively "appellants"), guilty of "academic cheating or plagiarism" in the completion of a take-home examination in violation of University of Tennessee rule 1720-4-3.03(1)(a). As punishment, the University placed appellants on indefinite disciplinary suspension. The Chancery Court of Davidson County affirmed the University's action. On appeal, appellants assert that the finding of guilt was not supported by substantial and material evidence. For reasons stated hereinafter, we affirm the trial court's order.

At all times pertinent to this case, appellants were graduate students at the University of Tennessee at Knoxville. During the fall semester of 1994, appellants were enrolled in a graduate statistics course taught by Dr. Mary Sue Younger ("Dr. Younger"). Students enrolled in the course were issued individual computer accounts which could be accessed only by using a student's name and confidential password.

On December 8, Dr. Younger distributed to appellants, as well as to other students in the class, a take-home examination ("exam") with instructions to return the answers to the exam by 5:00 p.m. on Tuesday, December 13. The exam contained four problems which required the use of a computer and a printer. The students were allowed to use certain materials in the completion of the exam, including class manuals, notes, and prior homework. Students were also allowed to consult with the class teaching assistant Yuriko Taketani and Dr. Younger herself. Collaboration on the exam, however, was not permitted. A statement conveying this thought was conspicuously displayed on the cover of each copy of the exam: "I understand that it is considered cheating to give or receive any unauthorized assistance on this exam." Appellants signed this statement, acknowledging their comprehension of this prohibition.

Appellants submitted their exams to Dr. Younger by the designated deadline. Data

2

sets were not required to be turned in with the exams. Appellant Tatum, however, turned in copies of her data sets. In the course of grading the first exam problem for all the students, Dr. Younger discovered that one of the papers had data entry errors for the problem which resulted in incorrect answers. As she continued to grade papers, Dr. Younger happened upon another paper with the identical wrong answers. These papers belong to appellants. Dr. Younger further testified that no other student had made similar errors. Based upon a comparison of the two test papers, Dr. Younger determined that appellants' answers to problem one were wrong in exactly the same way. She concluded that the two students had to have made the same data entry errors in order to achieve the same incorrect answers.

Thereafter, Dr. Younger left telephone messages with each of the appellants, asking each to contact her. Appellant Tatum was out of town, but appellant Durr met with Dr. Younger in her office on December 14, 1994. At the meeting, Dr. Younger sought and received Durr's computer user name and her confidential password for her class account. Dr. Younger made a printout of Durr's data sets and compared it to Tatum's data sets. Durr's data sets contained data entry lines which were identical in every way to the data sheet included by Tatum with her exam. Specifically, the data sets compiled by Tatum and Durr omitted three numbers, and the omissions occurred in the exact sequence in the set of ninety numbers. Durr offered no explanation to Dr. Younger as to how the data replications occurred.

Following her meeting with Durr, Dr. Younger continued to compare the two exam papers. She found that problem two of the exam also contained identical incorrect results. Tatum had erroneously repeated a series of three numbers which resulted in an incorrect total of forty-eight data sets rather than forty-five. Durr also entered forty-eight data sets rather than forty-five. Dr. Younger's testimony was that the computer-generated output for problem two was identical for both Tatum's and Durr's exams. At trial, it was undisputed that identical incorrect data had to have been entered in both exams for this to have occurred.

3

Other common errors, format congruencies, and common peculiarities were also put into evidence at the hearing. A majority of the incorrect or peculiar entries differed only in terms or abbreviations that were used to designate the same set, category, or item. Both Tatum and Durr plotted a graph erroneously by swapping the X and Y axis. On the same graph, Tatum and Durr used letters rather than numbers to plot points. One other student plotted a backward graph, but used numbers instead of letters to plot the points. Appellants arranged their data sets for problem one in alphabetical order rather than the order in which the data appeared with the explanation at the hearing that at some point during the course of the class, they were told that alphabetical ordering was appropriate to use with the SAS program. However, Dr. Younger pointed out in her testimony that neither Tatum nor Durr followed an alphabetic designation for the data in problem two. Further instances of similarities can be found in the record which render the exams submitted by appellants to be strikingly congruent.

Appellants testified on their own behalf. Each denied collaborating with the other on the exam. Tatum contends that she could have entered her data into the computer, made a print request, inadvertently picked up another student's data printout and then reentered the data as her own. Both Tatum and Durr suggested that the similarities could be attributed to computer/printer "glitches." Appellants further testified that they had the habit of transposing the X and Y axis on their graphs.

The trial court noted that "no testimony was offered to support appellants' claim that a computer/printer error could have occurred such that computer entries made by the two students could have become commingled on the same printed document or that such commingling did in fact occur." The record evinces that one witness testified that the printer in the computer laboratory could have printer misfeeding problems. But the witness testimony evinced that these misfeeding problems only resulted in paper being printed out of order. This witness testified that the quality of the printouts would not be affected nor would the printouts result in a combination of words or misprints. The trial court properly noted that of the eight affidavits submitted by the appellants in support of the "printer

4

problem" theory, only one person claimed personal knowledge of the printer in question having combined print on one page sent from two different people or monitors.

The sole issue before this Court on appeal is as follows:

> Whether the decision of the University of Tennessee at Knoxville, affirmed by the trial court, was supported by substantial and material evidence?

Both this Court and the Chancery Court review decisions under the Administrative Procedures Act pursuant to Tennessee Code Annotated § 4-5-322(h), which provides:

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion;  or
> (5) Unsupported by evidence which is both substantial and material in the light of the entire record.

In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322(h) (Supp. 1997).

Further, Tenn. Code Ann. § 4-5-322(I) requires:

> No agency decision pursuant to a hearing in a contested case shall be reversed, remanded or modified by the reviewing court unless for errors which affect the merits of such decision.

Tenn. Code Ann. § 4-5-322(I) (Supp. 1997).

In addition, such review is limited to the record of the case. Tenn. Code Ann. § 4-5-322(g). Findings of fact made by the agency may not be reviewed *de novo* by the trial or appellate courts, and courts should not substitute their judgment for that of the agency as to the weight of the evidence on factual issues. *Southern Ry. Co. v. Tennessee Bd. of Equalization*, 682 S.W.2d 196, 199 (Tenn. 1984); *CF Indus. v. Tennessee Pub. Serv.*

5

*Comm'n*, 599 S.W.2d 536 (Tenn. 1980); *National Council on Compensation Ins. v. Gaddis*, 786 S.W.2d 240, 242 (Tenn. Ct. App. 1989). Factual issues must be reviewed upon a standard of substantial and material evidence. *Humana of Tennessee v. Tennessee Health Facilities Commission*, 551 S.W.2d 665 (Tenn. 1977). Substantial and material evidence is such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration. *Clay County Manor, Inc. v. State*, 849 S.W.2d 755 (Tenn. 1993). The "substantial and material evidence standard" in Tenn. Code Ann. § 4-5-322(h)(5) requires a searching and careful inquiry that subjects the agency's decision to close scrutiny. *Wayne County v. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988).

Appellants allege that the hearing officer's decision was not supported by substantial and material evidence in the record. Tenn. Code. Ann. § 4-5-322(h). We disagree.

In her Initial Order, the hearing officer stated that the exams papers submitted by Tatum and Durr were "rife with identical errors and nearly identical entries." After perusing the record, the trial court found extensive evidence to support the University's charges of collaboration. Specifically, the trial court found the following to be indicative of collaboration:

> ** the omission of the same three numbers in the exact same sequence in a 90-number data set in Question #1 (resulting in identical incorrect answers);
> ** the addition of the same three numbers in consecutive sequence in a 45-number data set in Question #2 (resulting in identical incorrect answers);
> ** rows of data in reverse order in Question #1, but normal order in Question #2;
> ** the use of letters for values in Question #3, but not in the other three questions;
> ** the uses of numbers "1" and "2" instead of the letters "m" and "f" to designate male and female;
> ** the uses of numbers instead of names to represent television shows in Question #1;
> ** the omission of the same key term in the printed formula for Question #1, even though it was included in both students' calculations;
> ** graphs charted backwards on Question #3.

Even taking into account all matters in the evidence which detract from the weight

of the evidence, Tenn. Code Ann. § 4-5-322(h), the findings of the Administrative Law Judge and the trial court are supported by substantial and material evidence.

Accordingly, the judgment of the trial court is affirmed. Costs of this appeal are taxed to appellants, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:

_____
FARMER, J.

_____
LILLARD, J.