IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 3, 2003 Session

## MORRISTOWN SURGERY CENTER, LLC v. TENNESSEE HEALTH FACILITIES COMMISSION, ET AL.

Appeal from the Chancery Court for Davidson County
No. 02-258-III     Ellen Hobbs Lyle, Chancellor

No. M2002-02872-COA-R3-CV - Filed December 15, 2003

This appeal under the Administrative Procedures Act challenges a chancery court order affirming the dismissal of the Appellant's Petition for Contested Case Review. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J. and JAMES L. WEATHERFORD, SR. J., joined.

Michael D. Brent, W. Davidson Broemel, Melissa Ballengee, Nashville, Tennessee, for the appellant, Morristown Surgery Center, LLC.

Paul G. Summers, Attorney General and Reporter; Sara E. Sedgwick, Assistant Attorney General; Sue Ann Sheldon, Assistant Attorney General, for the appellee, Tennessee Health Facilities Commission.

Warren L. Gooch, Robert W. Knolton, Knoxville, Tennessee, for the appellee, Associates of the Meridian Health Outpatient Center, LLC.

### OPINION

This dispute originated with the filing of two applications for Certificates of Need (CON). Morristown Surgery Center, LLC (MSC) sought a CON for its proposed facility across Seventh Street North on the campus of Lakeway Regional Hospital. Associates of the Meridian Health Outpatient Center, LLC (Meridian) sought a CON for its proposed facility to be located on West Fourth Street North, adjacent to Morristown-Hamblen Hospital. The Tennessee Health Facilities Commission (the Commission) scheduled these applications for simultaneous review. During the course of the Commission's hearing, a suggestion was made that MSC's certificate may have been substantially amended by the addition of certain other putative owners, namely a Dr. Robert Lane,

who had previously registered opposition to both applications. Shortly after this suggestion was made upon the Commission's record, MSC deferred its application, leaving Meridian's application remaining. During consideration of the Meridian application, the Commission heard only from Dr. Lane in opposition.

Prior to the deferral of MSC's application, in opening statements, counsel for MSC made certain comments comparing MSC's application to that of Meridian, stating that for various reasons MSC's facility would be a better alternative to that of Meridian. Further, after the deferral, and despite the continued presence of representatives of MSC in the Commission hearing, MSC made no further statements in opposition on the record. After the hearing on December 13, 2000, the Commission issued a Certificate of Need to Meridian.

On January 12, 2001, MSC filed a Petition for Contested Case Review challenging the Commission's issuance of a CON to Meridian. The Commission and Meridian filed separate motions to dismiss challenging MSC's standing to contest the CON's issuance under Tennessee Code Annotated section 68-11-109.[1] After hearing oral argument on the motions, and upon consideration of the Commission's record, the Administrative Law Judge dismissed MSC's Petition for Contested Case Review and entered findings of fact consistent with the above recitation. Of particular note in those findings is the following description of Dr. Lane's role in the application process for both MSC and Meridian:

> 2)     Prior to the December 13, 2000 meeting of the Commission, a written objection was received from Dr. Robert Lane, who entered an objection to both the Petitioner's and the Respondent's applications for certificates of need. No other written objections were received regarding the Respondent Meridian's proposed project.
> 3)     At the December 13, 2000 Commission meeting, Mr. Michael Brent, counsel for the Petitioner's proposed Morristown/Lakeway project, was present to advance the Petitioner's interest in receiving a CON from the Commission. When Mr. Brent introduced to the Commission those persons present who would be speaking on behalf of the project, Mr. Brent did not include Dr. Robert Lane among those he had assembled to speak to the Commission that day on behalf of the Petitioner's project.
> 4)     Dr. Lane appeared at the December 13, 2000 meeting of the Commission, and described his participation in physician discussions with supporters of both the Morristown/Lakeway project and the Meridian project. Dr. Lane stated to the Commission:
>
> > . . . I invited all of the surgeons in town to my house to discuss the possibility [of building an ambulatory surgical treatment center]. All

---

[1] Inasmuch as the entirety of the proceedings below took place pursuant to the Tennessee Health Planning and Resource Development Act of 1987, which was repealed by the legislature effective July 1, 2002; 2002 Pub. Acts, c. 780, § 9, the citations in this opinion shall be to the statutes as they appeared prior to this repeal.

of them were enthusiastic about the opportunity to provide a center locally. As currently, patients desiring to go to this type of facility must go elsewhere [sic]. We decided at that time to approach Morristown-Hamblen Hospital [the Meridian project], intending to work with them to make this concept a reality. We subsequently had discussion with both hospitals, and as a group have decided to support the application of Lakeway Regional Hospital. Why Lakeway and not Morristown-Hamblen, or both? Well, it was felt that our community could not keep two centers busy. Our assessment was that the opportunity for physician input, guidance and direction was better with the former. This decision was made two days ago at the meeting to which all procedure-oriented physicians were invited after animated discussion and vote.

Dr. Lane's comments were in support of the Morristown/Lakeway project, and appeared to be related to his belief that the region could not support two centers, and his belief that the terms of the Morristown/Lakeway project would be more favorable to the surgeons he had organized to discuss the projects. And, as noted above, Dr. Lane informed the Commission that "this decision was made two days ago at the meeting to which all procedure-oriented physicians were invited after animated discussion and vote." Dr. Lane then ended his remarks.

. . . .

8)     As noted above, at one point during the December 13, 2000 meeting of the Commission, Petitioner Morristown/Lakeway requested that consideration of its application be deferred to the January meeting of the Commission for their consideration at that time. Mr. Michael Brent, Counsel for the Petitioner Morristown/Lakeway, then apparently left the Commission meeting and did not return. Accordingly, Petitioner Morristown/Lakeway did not formally object to the Respondent Meridian's application at the Commission meeting.

Additionally, at no point did Dr. Lane, clearly and unequivocally acting on behalf of the Petitioner Morristown/Lakeway, indicate that he was objecting to the Meridian's application on behalf of Morristown/Lakeway. Indeed, Dr. Lane's status at the Commission meeting seemed from the record to be more that of a nebulously floating "belle" awaiting the approach of the most favorable dance partner. Because the status of Dr. Lane (and with whom he was actually affiliated and representing at the Commission meeting, or with whom he was not actually affiliated) is ambiguous in the record of the Commission's proceedings, and Dr. Lane did not clearly identify himself for all present and concerned as representing Petitioner Morristown/ Lakeway, the undersigned will not infer such representation, especially in light of the Petitioner's counsel's deferral of the Petitioner's CON application, in order to clarify whether Dr. Lane's statements to the Commission triggered concerns of a

"substantive amendment" to the Petitioner's CON application. The record before the Commission, at most, indicates that Dr. Lane was opposing both the Petitioner's application and the Respondent's application on his own behalf. Anything more, on this record, is sheer speculation.

In addition to such findings, the Administrative Law Judge made the following conclusions of law:

1)      T.C.A. § 68-11-108(h) provides two ways in which a health care institution or other person may object to a CON application. As explained in section 108(h)(1), a party opposed to a CON application "must file a written objection" with the Commission 15 days before a Commission meeting. In the alternative, T.C.A. § 68-11-108(h)(2) provides that a party objecting may appear before the Commission and express opposition. Only a party that has objected to a CON application in one of these ways may appeal the Commission's decision granting a CON.

2)      T.C.A. § 68-11-109(a)(1) provides as follows:

> Within thirty (30) days from the date of the commission's meeting at which action was taken on an application, the applicant, <u>any health care institution which filed a written objection in accordance with § 68-11-108(h)(1), or any other person who objected to the application pursuant to § 68-11-108(h)(2) may petition the commission in writing for a hearing, in the case of a commission approval or denial of an application.</u> Notwithstanding any other provision of law, all persons are and shall be barred from filing any petition for a contested case hearing after such thirty-day period, and the commission shall have no jurisdiction to consider any late-filed petition.

This statute identifies only three entities which may petition the Commission:  the applicant, a health care institution which has filed a written objection, or a person who objected to the application at the Commission hearing. This interpretation is confirmed by the Commission regulations which provide:

> Eligibility to appeal. <u>Any person with legal standing, and who meets the requirements of T.C.A. § 68-11-109</u> may petition the Commission for a contested case hearing regarding the grant or denial of a certificate of need.

Rule 0720-6-.01(2) of the Rules of the Tennessee Health Facilities Commission.

3)      Petitioner Morristown/Lakeway did not file a written objection to Respondent Meridian's CON application. Counsel for Petitioner Morristown/Lakeway did not

state any verbal opposition to Respondent Meridian's CON application at the December 13, 2000 Commission meeting. At no time did Dr. Lane make any statements to the Commission that unequivocally established that he was speaking as a representative of Morristown/Lakeway. In fact, when Mr. Brent introduced those persons who were with him who were representing Morristown/Lakeway's CON application, he did not list Dr. Lane as one of these representatives. [page 4, Transcript of December 13, 2000 proceedings before the Tennessee Health Facilities Commission.] Accordingly, one can only conclude that Dr. Lane's comments at the Commission meeting were his gratuitous comments given to further his own interests, and that he was not representing Petitioner Morristown/Lakeway during the Commission meeting.

4)    For the foregoing reasons, IT IS HEREBY DETERMINED that Petitioner Morristown Surgery Center, LLC lacks standing to file a Petition for a Contested Case Hearing, and it is HEREBY ORDERED that the Petitioner's petition should be, and is hereby, DISMISSED.

This order was entered October 10, 2001. MSC filed its Petition for Reconsideration on October 25. The Administrative Law Judge denied that petition on November 8, 2001. The initial order became final on November 26, and from that final order MSC filed its Petition for Judicial Review in chancery court on January 24, 2002. In a Memorandum and Order entered October 23, 2002, the chancery court affirmed the dismissal by the Administrative Law Judge and dismissed the Petition for Judicial Review with prejudice. It is from this order that MSC appeals.

MSC asserts that its opposition to Meridian's application for certificate of need was expressed first by counsel for MSC in his opening remarks in the portion of the simultaneous proceeding dealing with MSC's application. MSC further argues that its "continued presence" during the consideration of Meridian's application for certificate of need, and comments of other witnesses, "while not specifically mentioning Meridian," supported MSC's application and opposed Meridian's application.

Administrative decisions in contested cases rise or fall pursuant to Tennessee Code Annotated section 4-5-322(h). The decision of the Administrative Law Judge dismissing the contested case must be upheld unless MSC can show that the decision violated constitutional or statutory provisions, exceeded the statutory authority of the agency, was made upon unlawful procedure, was arbitrary or capricious or unsupported by substantial and material evidence. Tenn. Code Ann. § 4-5-322(h). MSC specifically argues that the dismissal of its petition for contested case violated Tennessee law, was unsupported by evidence which is substantial and material, and otherwise a clear abuse of discretion.

I. Violation of Tennessee Law

MSC argues that the ALJ misapplied section 68-11-108(h)(2) in excluding statements of counsel and parties unrelated to MSC as expressions of oppositions required by that section. In so arguing, MSC requires application of subsection 2 consistent with the well settled principles of statutory construction. Under these principles we must give effect to the statute's reasonable interpretation in light of the purposes, objectives and spirit of intent of the Legislature as it is expressed in the words of the statute. *See Freeman v. Marco Transportation Co.*, 27 S.W.3d 909, 911 (Tenn.2000); *Dorrier v. Dark*, 537 S.W.2d 888, 892 (Tenn.1976). This intent is deciphered first from the plain meaning of the statutory language, affording words of daily parlance their ordinary meaning without tortured construction. *See Carson Creek Vacation Resorts, Inc. v. State Dept. of Revenue*, 865 S.W.2d 1, 2 (Tenn.1993). Throughout Appellant's argument, it asserts the 'obvious' nature of its opposition to Meridian's application. However, in illustrating its position before the ALJ, the chancellor and this Court, MSC points to a set of circumstances from which opposition may be inferred. More specifically, MSC urges that the nature of simultaneous review creates a context in which any statement in support of MSC's application, whether it remained in the company of Meridian's application or was deferred, as the record suggests, amount to opposition of Meridian's application.

A.      SIMULTANEOUS REVIEW

The Commission scheduled the CON applications for simultaneous review pursuant to Tennessee Code Annotated section 68-11-106. MSC argues that section 106 is to be interpreted in such a way as to require that petitions so reviewed are automatically competing petitions. In such a context, the very hearing process would suggest the appearance of opposition. The appellant buttresses this argument with citation to the administrative rule which, notwithstanding the applicable statutory language, had yet to be amended to account for simultaneous review. This argument fails to consider that the rules of administrative agencies go no further than the statutory authority granted to them. *See, generally, Tenn. Pub. Serv. Comm'n v. Southern Rwy. Co.*, 554 S.W.2d 612, 613 (Tenn.1977). The statute provides only for simultaneous review and this simultaneous review may be of competing or comparable or companion applications for Certificates of Need. Furthermore, this argument ignores the obvious discretion placed with the health facilities commission in ruling on simultaneous applications, namely that it may grant or deny one or the other or both. As appellant argues, the statutory scheme had previously provided for consideration of competing applications. However, prior to the filing of the application which is the subject of this appeal, the portion of the statutes dealing with competing review had been replaced with the "simultaneous" review provisions.

All of the events in this case occurred between September of 2000 when both parties filed their respective applications for Certificates of Need and November 26, 2001 when the order of the ALJ became final. This time frame is important in this case because all events occurred after the effective date of Chapter 627 of the Public Acts of 2000 (April 5, 2000) and prior to the effective

date of Chapter 780 of the Public Acts of 2002 (July 1, 2002) which latter Act repealed Tennessee Code Annotated section 68-11-106 in its entirety.

While Tennessee Code Annotated section 68-11-106, prior to April 5, 2000, envisioned "competing applications" Chapter 627 of the Public Acts of 2000 specifically deleted from the statute all references to "competing applications" and instituted in lieu thereof a system of "simultaneous review."

Meticulous comparison between Chapter 627 of the Public Acts of 2000 and preexisting Tennessee Code Annotated section 68-11-106 through 109 leads to the inescapable conclusion that the legislature completely abolished "competing applications" and substituted in lieu thereof a system of "simultaneous review" and made it clear that the mere filing of an application was not an objection to another application that might previously have been referred to as "competing."

After deleting all references to "competing applications" section 2 of the Act amended Tennessee Code Annotated section 68-11-106(d)(2) by deleting it in its entirety and substituting:

> (2)  Persons desiring to file a certificate of need application seeking a simultaneous review regarding a similar project for which a letter of intent has been filed, shall file with the commission a letter of intent within ten (10) days after publication of the first filed letter of intent.  A copy of any letter of intent filed after the first letter of intent shall be mailed or delivered to the first filed applicant, and shall be published in a newspaper of general circulation in the proposed service area of the first filed applicant within ten (10) days after publication by the first filed applicant.  The applications shall be considered and decided by the health facilities commission simultaneously.  The commission may refuse to consider the applications simultaneously, if it finds that the applications do not meet the requirements of "simultaneous review" under the rules of the commission.

Section 4 of the Act specifically <u>deleted</u> the portions of previous section 68-11-106(d)(1) providing:

> The published letter of intent must contain a statement (1) that any health care institution wishing to oppose the application must file written notice with the commission not later than fifteen (15) days before the commission meeting at which the application will be heard and (2) that any other person wishing to oppose the application must file a written objection with the health facilities commission at or prior to the consideration of the application by the health facilities commission.

Section 6 of the Act provided:

> Tennessee Code Annotated, Section 68-11-106(d)(4), is amended in the first sentence by deleting the language "if two (2) or more applications are competing,"

and substituting in lieu thereof, the language "if there are two (2) or more applications to be reviewed simultaneously"; and in the second sentence by deleting the language "as competing."

Section 9 of the Act added a new subsection, codified as section 68-11-108(h) which provided:

> (h)(1)  Subject to subdivision (2) below, any health care institution wishing to oppose a certificate of need application must file a written objection with the health facilities commission and serve a copy on the contact person for the applicant, not later than fifteen (15) days before the commission meeting at which the application will be heard.  An application for which the commission has received opposition shall be designated on the commission's agenda as an opposed application.

> (2)  A health care institution or other person may appear before the commission and express opposition to an application without complying with the requirements of subdivision (1), provided that if a health care institution does not provide notice of its opposition as required by subdivision (1), and if such health care institution initiates a contested case pursuant to Section 68-11-109, then such health care institution shall be solely responsible for the commission's costs of the contested case proceeding and shall reimburse to the applicant the filing fee paid by the applicant, notwithstanding any other provision of law.  Noncompliance with subdivision (1) shall not preclude a health care institution from intervening in a contested case proceeding initiated by the applicant.

Finally, section 10 of the Act provided:

> SECTION 10.  Tennessee Code Annotated, Section 68-11-109(a), is amended by deleting from the first sentence the phrase "or any person who filed directly with the commission a prior objection to the granting of a certificate of need," and substituting instead the phrase "any health care institution which filed a written objection in accordance with section 68-11-108(h)(1), or any other person who objected to the application pursuant to section 68-11-108(h)(2)"; and by deleting from the second sentence the phrase "or a petition for intervention."

The legislative history, unnecessary to consider in the absence of ambiguity, only reinforces the appellee's position that simultaneous review does not automatically create competing applications.

Indeed, a review of the administrative record reveals that each application retains its individual character despite the simultaneous consideration.  Both applications retain their own application numbers, and the consideration of each is individualized.  It is also well to note that at

the time Meridian's application was considered, the nature of that consideration had lost its simultaneous character due to MSC's deferral of consideration of its own application beforehand. In our review of the administrative record we note that at each of the Commission invitations for opposition, the only individual responding to each request would have been Dr. Lane had he not, as the Administrative Law Judge had suggested, sought a different dance partner. The review of the applications as borne out in the administrative record shows that the only effect of simultaneous review is to take up two applications in the same session. That simultaneous character does not convert simultaneous applications to competing applications. To apply this reasoning would be to give a tortured construction to the simultaneous review language in Tennessee Code Annotated section 68-11-106-109, in a situation where statutory construction is not required.

In addressing the effect of Chapter 627 of the Public Acts of 2000 both the ALJ and the chancellor implemented the long standing admonition of the Tennessee Supreme Court relative to an unambiguous statute:

> Where the language contained within the four corners of a statute is plain, clear, and unambiguous and the enactment is within legislative competency, "the duty of the courts is simple and obvious, namely, to say *sic lex scripta*, and obey it." *Miller v. Childress*, 21 Tenn. (2 Hum.) 319, 321-22 (1841). The rule stated in *Miller* has retained its pertinence as a guide to modern courts in statutory construction. *See, Austin v. Memphis Publishing Company*, 655 S.W.2d 146 (Tenn.1983).
>
>> . . . if [the legislative intent] is expressed in a manner devoid of contradiction and ambiguity, there is no room for interpretation or construction, and the judges are not at liberty, on consideration of policy or hardship, to depart from the words of the statute; that they have no right to make exceptions or insert qualifications, however abstract justice or the justice of a particular case may require it.
>
> *Austin*, supra at 148, quoting *Heiskell v. Lowe*, 126 Tenn. 475, 499, 153 S.W. 284, 290 (1912).

*Carson Creek Resorts v. Dept. of Revenue*, 865 S.W.2d 1, 2 (Tenn.1993).

Neither the ALJ, the chancery court, nor this Court has any authority but to implement that mandate of the legislature.

B.      EXPRESSED OPPOSITION

In this simultaneous review context each applicant was given the opportunity to introduce their representatives. The party expressing opposition to each application was given a separate opportunity to do so. The clerk would have been made aware of any formal opposition due to the filing requirement under 68-11-108(h)(1). The only opposition registered to Meridian's application

was that of Dr. Lane, who had registered written opposition to MSC's application also, as did Meridian. For whatever reason, MSC did not register any written opposition to Meridian's application. Likewise, MSC did not express oral opposition at the three opportunities afforded it by the Commission. Rather, MSC urges as opposition the comments of counsel during the consideration of its own application and the statements of Dr. Lane, who is admittedly unaffiliated with MSC. This argument not only flies in the face of the language of the statute, but also in the face of plain logic.

Since the ALJ and the trial court applied this plain and common sense interpretation to the statutory language, this Court finds no violation of Tennessee law therein.

II.      Substantial and Material Evidence

Considering the substantial and material evidence standard, this Court recognizes that the ALJ's determination was reviewed in the first instance by the chancellor, who affirmed the ALJ's findings of fact. As our supreme court has stated:

> Findings of fact made by the agency may not be reviewed *de novo* by the trial or appellate courts, and courts should not substitute their judgment for that of the agency as to the weight of the evidence on factual issues. *Southern Ry. Co. v. Tennessee Bd. of Equalization*, 682 S.W.2d 196, 199 (Tenn.1984); *CF Indus. v. Tennessee Pub. Serv. Comm'n*, 599 S.W.2d 536 (Tenn.1980); *National Council on Compensation Ins. v. Gaddis*, 786 S.W.2d 240, 242 (Tenn.Ct.App.1989). However, the "substantial and material evidence standard" in Tenn.Code Ann. § 4-5- 322(h)(5) requires a searching and careful inquiry that subjects the agency's decision to close scrutiny. *Wayne County v. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn.Ct.App.1988).

*Sanifill of Tennessee, Inc. v. Tennessee Solid Waste Disposal Control Board*, 907 S.W.2d 807, 810 (Tenn.1995). Furthermore, our supreme court has provided the following guidance when the chancellor and the administrative law judge concur in their findings:

> We cannot, as a general rule, "afford any broader or more comprehensive review to cases arising under the Act than is afforded to them by the trial court in the first instance . . . ." *Humana of Tenn. v. Tenn. Health Facilities Com'n.*, 551 S.W.2d 664, 668 (Tenn.1977). Further a concurrent finding between the agency and the trial court on any issue of fact is conclusive upon this Court.

*CF Industries v. Tennessee Public Service Comm'n*, 599 S.W.2d 536, 540 (Tenn.1980).

The ALJ and the chancellor agreed that Dr. Lane was no ally of MSC and expressed no opposition on its behalf. In addition, the petitions for certificates of need in the record before the

Commission suggest no competition between the two. We find that substantial and material evidence support the conclusions of the Administrative Law Judge and the chancellor.

III. Arbitrary and Capricious Standard

Having examined the statutes as they existed at the time of the simultaneous review of MSC's and Meridian's applications, and having reviewed the administrative record in its entirety, this Court cannot find that the Commission or the Administrative Law Judge made a clear error in judgment. *See Jackson Mobilphone Co. v. Tennessee Public Service Comm'n*, 876 S.W.2d 106, 110-11 (Tenn.Ct.App.1993). On the contrary, we find, in light of MSC's tacit appearance during the consideration of Meridian's application, after the deferral and eventual withdrawal of its own application, and in the face of three requests for the expression of opposition, a denial of the motion to dismiss would be arbitrary and capricious. The action of the chancellor is affirmed. Costs on appeal are assessed against Appellant for which execution may issue.

_____
WILLIAM B. CAIN, JUDGE