**TENNESSEE MEDICAL ASSOCIATION and John Lamb, M.D., Petitioners/Appellees,**

**v.**

**The BOARD OF REGISTRATION IN PODIATRY, Respondent/Appellee,**

**v.**

**Steven HEAD, D.P.M., Intervenor/Appellant.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

June 2, 1995.

Permission to Appeal Denied by Supreme Court Oct. 2, 1995.

David L. Steed, Cornelius & Collins, Charles W. Burson, Attorney General and Reporter, Sue A. Sheldon, Assistant Attorney General, Nashville, for Petitioners/Appellees.

William B. Hubbard, Weed, Hubbard, Berry & Doughty, Nashville, for Respondent/Appellant.

## *OPINION*

LEWIS, Judge.

This matter commenced when Dr. Steven Head, D.P.M., Intervenor, filed a petition with the Board of Registration in Podiatry (Board), seeking a declaratory order that the

treatment of an ankle sprain was within the definition of a podiatrist as defined by Tennessee Code Annotated section 63–3–101. The Tennessee Medical Association and Dr. John Lamb, an orthopaedic surgeon, were allowed to intervene at the Board hearing.

Following the declaratory order hearing, the Board voted unanimously to expand the definition of podiatrist to include the treatment of the soft tissue involved in an ankle sprain, both above and below the ankle joint. The Board held that in order to effectively treat an ankle sprain, podiatrists must be allowed to treat the structures adjacent to the foot. The Board's order became final on 16 June 1993.

The petitioners filed their Petition for Review pursuant to Tennessee Code Annotated section 4–5–322 seeking a reversal of the Board's decision. They requested a reversal of the Board's order expanding the definition of foot to include the ankle, and an injunction enjoining the Board from issuing orders permitting treatment of structures other than the foot. They also sought a declaration that treatment of an ankle sprain exceeds Tennessee Code Annotated section 63–3–101, to the extent it requires treatment of structures above the foot.

Following the contested case hearing before the Board, the Board made four findings of fact and rendered conclusions of law, in part, as follows: (1) In order to effectively treat the ailments of the human foot, the podiatrist must be able to treat structures adjacent to the human foot; (2) It is a duty of the Board of Registration in Podiatry to clarify any statute, rule, or order within its primary jurisdiction in this case. T.C.A. § 63–3–101. Based on the foregoing findings, the Board ordered as follows: "The Board finds an ankle sprain falls within the definition of podiatrist found in T.C.A. 63–3–101."

Tennessee Medical Association and Dr. John Lamb filed a Petition for Review to review the order of the Board, pursuant to Tennessee Code Annotated section 4–5–322. Appellant, Dr. Steven Head intervened in the Petition for Review.

Following submission of the briefs by the parties and oral argument, the Chancellor reversed the decision of the Board and remanded the case for further proceedings.

The intervenor, Dr. Steven Head filed a Notice of Appeal to this court.

■ It is uncontested that podiatrist are limited to "treatment of ailments of the human foot." T.C.A. § 63–3–101. Therefore, the issue presented to the Board was whether an ankle sprain is an ailment of the human foot. In order for the Board to determine this question, it required a determination by the Board of whether the term foot included ankle.

There was no evidence to establish that the term "foot" means "foot and ankle." In the absence of substantial and material evidence to support a finding that foot means foot and ankle, there was no substantial and material evidence to establish that treating an ankle sprain is treating an ailment of the human foot. The evidence presented in this case addressed many issues not relevant to the issue of whether an ankle sprain is an "ailment of the human foot." Among this evidence was the following:

1. Testimony as to whether the foot and ankle are "inseparable";
2. Whether the function of the foot is affected by structures in the ankle;
3. Whether podiatrist in Tennessee are treating ankle sprains;
4. The scope of podiatry in other states;
5. The training received by podiatrists at podiatry schools in other states.

The Board's finding of facts and conclusions of law are as follows:

### Findings of Fact

1. T.C.A. § 63–3–101 authorizes podiatrists to treat ailments of the human foot;
2. By testimony of the witnesses and also based upon the Webster dictionary definition, the ankle is defined as the lower extremity joint involving the foot whose purpose is to hinge the foot unto the leg;

3. Ankle sprain is a total or partial disruption of the ligaments connecting the foot and the leg; and

4. Ankle sprains have a direct effect on the foot and the soft tissue structures which are damaged are within the substance of the foot.

### Conclusions of Law

To effectively treat ailments of the foot as outlined in T.C.A. § 63–3–103 will necessitate treatment and control of the adjacent structures. T.C.A. § 63–3–103 defines podiatrist as "one who examines, diagnoses or treats medically, mechanically or surgically, the ailments of the human foot...." The law does not demarcate the anatomical barrier. The Board finds that all the soft tissue involved in an ankle sprain are within that definition.

While the Board finds that the ligaments involved in ankle sprain are both "within the structure of the foot" and "connect the foot and the leg" there is no finding that the term "foot" means "foot and ankle." The Board based its order that an ankle sprain falls within the definition of podiatrist on the reasoning that: 1. "In order to effectively treat the ailments of the human foot the podiatrist must be able to treat structures adjacent to the human foot," and 2. "It is the duty of the Board of Registration in Podiatry to clarify any statute, rule, or order within its primary jurisdiction."

The sole issue presented by the appellant is: "Whether the Chancery Court erred in reversing the decision of the Board of Podiatry which had held that the statutory definition of podiatry includes the treatment of ankle sprains."

The Board is charged with the duty of prohibiting podiatrists from practicing beyond their statutory scope of practice. Tenn. Code Ann. § 63–3–106. This duty requires that the Board determine the statutory scope of practice and apply it to the situation presented by the contested case.

The instant case required the Board to determine whether treatment of ankle sprains was within the scope of the statute limiting podiatrists to treatment of ailments of the human foot. Is an ailment of the ankle necessarily an ailment of the foot? Two podiatrists at an orthopaedic surgeon testified, in great detail, at the hearing. However, nowhere in this testimony was there substantial or material evidence that the ankle is part of the foot, and that all ankle sprains or other ailments are also ailments of the human foot.

Reversal or modification of the Board's decision is appropriate when the decision is not supported by substantial and material evidence. Tenn.Code Ann. § 4–5–322(h)(5). The decision of the Board may be reversed or modified if the rights of the petitioner have been prejudiced because the Board's findings, inferences, conclusions, or decisions are "unsupported by evidence which is both substantial and material in light of the entire record."

Our review of this record reveals that the Board's decision was not supported by substantial and material evidence, and that the trial court correctly reversed the decision of the Board. The record is lacking in substantial and material evidence that the common meaning of the term "foot" means "foot and ankle." The evidence before the Board established that the terms "foot and ankle" describe different anatomical areas. The evidence in the record established that the common usage of the term "foot" means the portion of the leg below the ankle. Webster's New International Dictionary of the English Language, Second Edition defines "foot" as "the terminal part of the leg of a man or an animal; that part of an animal upon which it rests when standing, or upon which it moves. In man, the foot is the *pes*, or part of the leg below the ankle joint or tibiotarsal articulation; ..." Webster's New International Dictionary of the English Language, Second Edition. The ankle cannot be part of the foot if the foot is below the ankle.

No evidence presented to the Board is in the record that the term "foot" means "foot and ankle." The record contains many substitute contentions designed to distract from this failure of evidence, such as: 1) the foot and ankle are inseparable; 2) the ankle contains some structures that may also extend into the foot; 3) ailments of the ankle may

have an effect upon the foot; 4) the ankle is attached to the foot; 5) the ankle is an integral part of the foot; 6) the issue is one of function, not anatomy, and 7) the podiatry profession's definition of the practice of podiatry. The Board did not make a finding that "ailments of the foot" include all ankle sprains, or that the ankle is part of the foot. The Board's fourth finding of fact that "the soft tissue structures which are damaged are within substance of the foot" is not square with the testimony of three witnesses. Dr. Quintavalle testified that the ligament injured in an ankle sprain runs "... from the fibula, which is the outer segment of the leg, down into the bones of the foot, connecting to the calcaneus ..." He further testified that the ankle includes the tibia and fibula, which he agreed are bones of the leg. He admitted that the term "foot sprain" can be used to describe the location of the sprain, which implicitly recognizes that ankle sprain means a sprain in an area other than the foot. Dr. Head testified:

Q: Is it your testimony that there are no ligaments involved in ankle sprains that extend up adjacent to the tibia?

A: No, I wouldn't—I wouldn't agree with that. There are some superior.

He also testified that not all ankle sprains are limited to the foot and that ankle sprains can continue up into the leg.

Q: When you're treating an injury that if [sic] you could call an ankle sprain, are there terms that can be used that are more precise than that, that would distinguish between ankle sprains involving the leg and ankle sprains involving the foot?

A: I don't think so, no.

Q. Along those same lines, would it be fair to say that there are some sprains that would be limited to the foot, sprains that you might also call an ankle sprain?

A: Yes. And likewise there are sprains that do continue up into the leg, like Dr. Lamb and Dr. Quintavalle had said.

Q: But, there are some ankle sprains that might involve the leg?

A: Yes.

Dr. Lamb testified that ankle sprains involve structures not within the structure of the foot.

Q: Do many of those diagnoses that you just mentioned involve structures above the foot?

A: Well, I think that all of them that involve the ligament do involve the ligaments which connect both above and below the ankle joint. And, obviously—and, of course, the bones we talked about, the tibia and fibula, are above the ankle joint.

The Board's finding that "the soft tissue structures which are damaged are within substance of the foot" is in conflict with their finding that an "ankle sprain is a total or partial disruption of the ligaments connecting the foot and leg." If the structures connect the foot with another structure, they obviously cannot be entirely within the substance of the foot.

Dr. Quintavalle testified that the differential diagnosis of an ankle sprain would include fractures of the tibia and fibula and injury to the ligaments connecting these two leg bones. According to Dr. Head, these structures cannot be construed as "foot."

There was no evidence that all ankle sprains are to structures entirely "within the substance of the foot." We have not been directed to nor have we found any evidence to support this contention.

Dr. Head's testimony on what constitutes ankle, foot, and leg was inconsistent and contradictory. He first testified that he considered the ankle to be part of the leg and part of the foot. He then testified that he considers a tibia and fibula to be part of the ankle but not part of the foot. He then testified that the tibia and fibula are part of the foot when they are around the ankle joint by virtue of the fact that they are part of the ankle.

Q: So, you're saying, you're hypothesizing that the ankle is part of the foot, but that the bones of the tibia and fibula, which you say you would treat in a fracture, are not part of the foot? The distal tibia and fibula?

A: Well, they are leg bones, and the majority of those bones are in the leg. But, when they are around the ankle, then, personally, I would consider them part of the ankle joint and therefore part of the foot.

We are of the opinion that the witnesses testifying on behalf of appellant were not testifying as to what the terms "foot and ankle" meant, but rather as to what they believe should be the scope of podiatry practice.

Dr. Quintavalle admitted that his definition of podiatry is beyond the Tennessee statutory scope of practice.

Q: Is it your opinion that the practice of podiatry includes surgery on the ankle?

A: Yes, sir.

Q: Your definition of podiatry goes beyond the treatment of ailments of the foot, would that be a fair statement?

A: Yes, it would.

. . . .

Q: You would agree that your interpretation of the practice of podiatry is at variance with what you've read about the law in Tennessee?

A: That's correct.

. . . .

Q: Would your definition of the scope of podiatry include treatment of the gastraveneous muscle?

A: As I interpret your law here in Tennessee, or in general?

Q: Are those two things different?

A: Yes.

Dr. Quintavalle admitted he did not have any special expertise in the interpretation of words and the meaning of words; however, neither of appellant's witnesses referred the Board to any authority defining the term "foot." Dr. Quintavalle testified that "the ankle is the joint that connects the foot to the leg. Where does it end and where does it stop, that's probably a tough question to answer. But, it's the joint that connects these two body parts." Dr. Lamb's definition of foot was "the foot is that part of the body below the ankle." Appellant relies on the theory that the ankle is inseparable from the foot; however, Dr. Quintavalle agreed that the ankle is also inseparable from the leg. To extend Dr. Quintavalle's logic demonstrates the impracticability of the inseparability argument. Dr. Quintavalle also agreed that his definition of podiatry did not include treatment of the knee, even though the knee is inseparable from the leg and his definition of podiatry includes treatment of structures in the leg.

Our review of this record reveals that there are no limits to appellants and the Board's definition of "ailments of the human foot." Dr. Quintavalle testified that his definition of podiatry includes treatment of structures in the leg that move the foot, as well as treatment of the foot. He admitted that the broader scope of podiatry would be included within treatment of the ailments of the foot.

Dr. Head testified that he sees patients in his office with non-displaced fractures of the tibia and fibula, and that he apparently treats these fractures. He testified "I feel comfortable treating even those." Dr. Head did admit that he did not consider these to be part of the foot. Dr. Quintavalle also demonstrated that his views of podiatry are opposite those of the Tennessee statute and that he sees no problem in a podiatrist billing himself as a "foot and ankle specialist." Tennessee Code Annotated section 63–3–119(15) prohibits a podiatrist from describing himself as anything other than a "foot specialist."

In *Connecticut State Medical Society v. Connecticut Board of Examiners in Podiatry*, 208 Conn. 709, 546 A.2d 830 (Conn.1988), the Connecticut Supreme Court faced the question of where the treatment of "ailments of the foot" includes treatment of the ankles. The court pointed out that resolving that issue first requires the determination of whether the ankle is part of the foot. The Board could then decide whether an ankle sprain is an ailment of the foot. The Connecticut Supreme Court noted that the term "foot" has a commonly understood meaning which is the part of the leg below the ankle and which does not include the ankle. *Id.* at 833.

■ We are also of the opinion that the order of the Podiatry Board is not entitled to any deference because the Board's ruling is one of statutory construction, rather than a question of fact, and because the issue is one that does not require the special expertise of the Board. A question of whether the term "foot" includes the ankle is a matter of statutory interpretation and does not require the Board's knowledge of podiatric practices. This is not a question that falls within the sole expertise of podiatrist. The Board's conclusion of law and reasons for the decision are inconsistent with the finding that an ankle sprain is an ailment of the human foot. The Board concluded that "to effectively treat ailments of the foot as outlined in T.C.A. § 63–3–103 will necessitate treatment and control of the adjacent structures." Tennessee Code Annotated section 63–3–101 defines podiatrist as "one who examines, diagnoses or treats medically, mechanically, or surgically, the ailments of the human foot...." The law does not demarcate the anatomical barrier. The Board finds that all the soft tissue involved in an ankle sprain are within that definition. The Board, therefore, concluded that the ankle is an adjacent structure, not a part of the foot. The ankle cannot be both a part of the foot and an adjacent structure.

The Board also found that all the soft tissue involved in an ankle sprain are within "that definition," but also found that "the law does not demarcate the anatomical barrier." The Board essentially did not make a finding as to what is meant by the term "foot." They found that they could not demarcate where the foot ends. If the Board could not determine where the foot ends it would be impossible for them to determine that "all of the tissue involved in an ankle sprain" is within the foot.

As is pointed out by the appellees, the appellant and the Board of Podiatry are entitled to attempt to expand the scope of podiatry; however, the proper vehicle for that expansion is by legislative revision of the podiatry statute, not through a contested case hearing that disregards the clear and plain meaning of the statute. The Board's decision extended the practice of podiatry to "areas adjacent to the foot" rather than determining whether an ankle sprain was an ailment of the foot.

The Board's decision was not based upon substantial and material evidence and exceeds the statutory authority of the Board. It therefore results that the judgment of the Chancellor in reversing the decision of the Board is affirmed, and the cause is remanded to the chancery court for any further necessary proceedings. Costs on appeal are assessed to the appellant, Steven Head, D.P.M.

CANTRELL, J., concurs.

TODD, P.J. (M.S.), concurs under separate opinion.

TODD, Presiding Judge, concurring.

I concur fully in the principal opinion that the order of the Board of Registration in Podiatry must be vacated for lack of substantial and material evidence.

The purpose of this opinion is to point out the obvious certainty in what has been considered a confused state of affairs.

From the uncontradicted evidence and the dictionary definition, it is obvious that the word "ankle" has two meanings, one of which is determinative of this dispute and the other of which is not.

The word "ankle" designates an area of the body which is the junction of the foot and leg. This area includes that part of the leg bone and foot bone which join, and the supporting soft tissue.

No anatomical members are peculiar to the ankle, except a thin layer of soft tissue between the leg bones, which are part of the leg, and the foot bones, which are part of the foot. Also in the area are soft-tissue organs which extend from the leg bones to the foot bones. They are not peculiar to leg or foot, but are partly located in the leg and partly in the foot.

The true anatomical meaning of "ankle," as distinguished from "ankle area" is the line of demarcation between the leg and foot which is recognized as the thin soft tissue at the point of articulation of the foot bones with the leg bones.

If this narrow definition of the word, "ankle" is recognized, then whatever bony or soft tissue is located below it is foot and treatable by a podiatrist, and whatever bony or soft tissue is located above it is not treatable by a podiatrist.

The Board or the Legislature might profit from the foregoing observations.