**SANIFILL OF TENNESSEE,
INC., Appellee,**

v.

**TENNESSEE SOLID WASTE DISPOSAL
CONTROL BOARD, Appellants.**

Supreme Court of Tennessee,
at Nashville.

Oct. 16, 1995.

Thomas V. White, Todd E. Panther, Nashville, John P. Williams, Nashville, for Appellee.

Charles W. Burson, Attorney General and Reporter, Michael E. Moore, Solicitor General, Barry Turner, Deputy Attorney General, Nashville, for Appellants.

## OPINION

BIRCH, Justice.

We granted the application for review under Rule 11, Tenn.R.App.P., filed by the Tennessee Solid Waste Disposal Control Board, the defendant in the original action.[1] At issue is whether the Tennessee Solid Waste Disposal Act, Tenn.Code Ann. § 68–211–101 *et seq.* authorizes the Tennessee Department of Environment and Conservation, in the exercise of its permit-issuing process, to restrict the number of counties from which private landfills may receive solid waste.

For the reasons stated below, we conclude that the statute does not confer such authority. Thus, we affirm as modified the judgment of the Court of Appeals.

## I

A permit was issued to the original owner, William Beckham, to begin operating the subject landfill on June 1, 1990. However, the permit authorized Beckham to receive solid waste from seven counties only: Bedford, Giles, Lincoln, Marshall, Maury, Rutherford, and Williamson.

In 1991, Sanifill of Tennessee, Inc. (Sanifill) purchased the landfill, and the Tennessee Department of Energy and Conservation (the Department) issued a permit on August 16, 1991, to Sanifill which reflected this change of ownership. This permit, however, limited Sanifill to the same seven-county service area as provided in the permit issued to Beckham.

On December 6, 1991, Sanifill sought to increase the number of counties from which it could receive solid waste from seven (as allowed) to forty-eight. The Department's Division of Solid Waste Management (the Division) treated this as a proposal for permit modification and on January 16, 1992, issued public notice that the Division intended to approve the permit modification.[2] During the ensuing public comment period, the Marshall County Commission adopted a resolution opposing the proposed expansion of the service area of the landfill. Thereafter, on February 12, 1992, the Division informed Sanifill that it would not further consider Sanifill's request for expansion of the service area until Sanifill obtained approval from the Marshall County Commission.

Sanifill appealed this action to the Tennessee Solid Waste Disposal Board (the Board) seeking a declaratory order; two issues were raised:

(1) Whether Tenn.Code Ann. § 68–211–105(h)[3] prohibited the Department from processing the permit modification until the modification had been approved by the Marshall County

---

1. Marshall County was a defendant in the original action but did not join in the Rule 11 application.

2. Tenn.Code Ann. § 68–211–106(b) provides the "[d]isposal or processing facilities or sites currently registered with the department shall not need a new permit unless and until their current registration must be amended to encompass any process modifications or expansions of operations currently allowed." Subsection (f) of that same section provides for public notice of certain matters affecting solid waste disposal. Interested persons may submit written comments to the commissioner. In cases where there is significant public interest in having a hearing on the matter, the commissioner shall hold one in the geographical area affected, after posting public notice of the hearing no less than 15 days in advance. Although the language of this subsec-

tion appears to contemplate public notice and hearings only in cases of proposed solid waste disposal or processing facilities, apparently the commissioner felt that the proposed expansion of the service area by Sanifill was a significant event meriting the public notice and hearing requirements of this section.

3. Tenn.Code Ann. § 68–211–105(h) provides: "The commissioner [of the Department of Environment and Conservation] shall not review or approve any construction for any new landfill for solid waste disposal or for solid waste processing in any county or municipality which has adopted the provisions of §§ 68–211–701—68–211–705 and § 68–211–707 until such construction has been approved in accordance with the provisions of such sections."

Commission in accordance with Tenn. Code Ann. § 68–211–701 *et seq.*[4]; and

(2) Whether the Tennessee Solid Waste Disposal Act and its implementing regulations allowed the Department to limit the counties from which Sanifill may receive solid waste at its private landfill.

The Board ruled against Sanifill on both issues, finding (1) that Tenn.Code Ann. § 68–211–105(h) prohibited the Department from acting on Sanifill's request to expand its service area until the request had been approved by the Marshall County Commission, and (2) that the Department had the authority to limit the counties from which Sanifill may receive solid waste.

Sanifill petitioned the Davidson County Chancery Court for review of the Board's declaratory order. The trial court reversed the Board's decision on the first issue, finding that the provisions of Tenn.Code Ann. §§ 69–211–701 *et seq.* requiring local approval of construction for landfills applied only to *new* landfills, not to landfills already established. The trial court ruled that Sanifill did not need local approval before seeking the Department's permission to service a larger area. The trial court affirmed the Board's decision on the second issue, holding that the Solid Waste Disposal Act[5] contained language broad enough to authorize the Department to restrict Sanifill's service area. The Solid Waste Disposal Board, Marshall County, and Sanifill all appealed the decision of the trial court to the Court of Appeals.

The Court of Appeals agreed with the Chancery Court on the first issue, finding unanimously that the provisions of Tenn. Code Ann. §§ 68–211–701 *et seq.* did not apply to Sanifill's request to expand its landfill's service area because there would be no "construction of a new landfill" as that

phrase is commonly understood. Further review of that issue is not sought by either party.

On the remaining issue, the Court of Appeals held that the Department had the duty and power to regulate and inspect landfills to ensure that they operated within the bounds of the policies and purposes of the Solid Waste Disposal Act and that the Department had the authority to limit the receipt of waste at a given site to an amount which could be safely and expeditiously processed. However, the intermediate court held that the Department had neither the express nor implied authority to limit the size of the service area without a showing that such limitation is necessary to protect the public health and safety. No such showing having been made in this case, the Court of Appeals held that the Department was without authority to regulate the point of origin of waste.

We now consider the Board's appeal from that judgment. As stated, the sole issue is whether the Department, in the exercise of its permit-granting function, has the authority to restrict the source areas from which solid waste may be received by the operator of a private landfill. For the following reasons, we affirm the decision of the Court of Appeals, as herein modified.

**II**

When reviewing an agency decision, the appropriate standard of review is that set forth in the Administrative Procedures Act:

The court may reverse or modify the decision [of the agency] if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

---

**4.** Tenn.Code Ann. § 68–211–701 provides:

No construction shall be initiated for any new landfill for solid waste disposal or for solid waste processing until the plans for such new landfill have been submitted to and approved by:

(1) The county legislative body in which the proposed landfill is located, if such new construction is located in an unincorporated area;

(2) The governing body of the municipality in which the proposed landfill is located, if such

new construction is located in an incorporated area; or

(3) Both the county legislative body of the county in which such proposed landfill is located and the governing body of any municipality which is located within one (1) mile of such proposed landfill.

**5.** Particularly, Tenn.Code Ann. § 68–211–107(a).

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5) Unsupported by evidence which is both substantial and material in the light of the entire record.

In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn.Code Ann. § 4–5–322(h). In addition, such review is limited to the record of the case. Tenn.Code Ann. § 4–5–322(g). Findings of fact made by the agency may not be reviewed *de novo* by the trial or appellate courts, and courts should not substitute their judgment for that of the agency as to the weight of the evidence on factual issues. *Southern Ry. Co. v. Tennessee Bd. of Equalization,* 682 S.W.2d 196, 199 (Tenn.1984); *CF Indus. v. Tennessee Pub. Serv. Comm'n,* 599 S.W.2d 536 (Tenn.1980); *National Council on Compensation Ins. v. Gaddis,* 786 S.W.2d 240, 242 (Tenn.Ct.App.1989). However, the "substantial and material evidence standard" in Tenn.Code Ann. § 4–5–322(h)(5) requires a searching and careful inquiry that subjects the agency's decision to close scrutiny. *Wayne County v. Solid Waste Disposal Control Bd.,* 756 S.W.2d 274, 280 (Tenn.Ct.App. 1988). Further, construction of a statute and application of the law to the facts is a question of law that may be addressed by the courts. *See Beare Co. v. Tennessee Dept. of Revenue,* 858 S.W.2d 906 (Tenn.1993). The issue of whether the Tennessee statutory scheme expressly or implicitly grants authority to the Department to regulate the service area from which a solid waste disposal facility may receive solid waste is a question of law, not of fact, and this Court's role is to interpret the law under the facts of this case.

■ Every action taken by an agency must be grounded in an express statutory grant of authority or must arise by necessary implication from an express statutory grant of authority. *Tennessee Pub. Serv. Comm'n v. Southern Ry. Co.,* 554 S.W.2d 612, 613 (Tenn.1977); *Wayne County,* 756 S.W.2d at 282. Even though statutes such as the Solid Waste Disposal Act should be construed liberally since they are remedial in nature, the authority they vest in an administrative agency must have its source in the language of the statutes themselves.

### III

■ The Department concedes that the Solid Waste Disposal Act (the Act) does not grant express authority to the Department to limit service areas as part of its function in the issuance of solid waste disposal permits. However, it argues that the power to impose such limitations is implicit in the broad language of the Act. Specifically, it cites the duties of the Department set forth in Tenn. Code Ann. §§ 68–211–105(a), –107(a). Those provisions provide, respectively:

The department shall exercise general supervision over the construction of solid waste processing facilities and disposal facilities or sites throughout the state. Such general supervision shall apply to all features of construction of solid waste processing facilities and disposal facilities or sites which do or may affect the public health and safety or the quality of the environment, and which do or may affect the proper processing or disposal of solid wastes.

Tenn.Code Ann. § 68–211–105(a) (1992 & Supp.1994);

The department shall exercise general supervision over the operation and maintenance of solid waste processing facilities and disposal facilities or sites. Such general supervision shall apply to all the features of operation and maintenance which do or may affect the public health and safety or the quality of the environment and which do or may affect the proper processing and disposal of solid wastes....

Tenn.Code Ann. § 68–211–107(a) (1992).

The Department insists that the language in the above sections provides authority, by

necessary implication, to impose service area limitations in the permits it issues. Pursuant to the Department's perceived grant of authority, it promulgated, among others, the following two regulations: "A facility may receive for disposal only those solid wastes it is allowed to manage under the terms of its permit." Tenn.Comp.R. & Regs. tit. VIII, ch. 1200–1–7–.04(2)(k)1 (1992); and "The permit application must include ... a narrative which clearly: Describes the type and anticipated volumes of solid waste to be disposed of and the sources which generate the waste (including a description of the rural and/or urban service areas if applicable)." Tenn. Comp.R. & Regs. tit. VIII, ch. 1200–1–7–.04(9)(c)6 (1991). Upon these regulations the Board specifically relies as authority to impose service area limitations in the permits it issues.

For the following reasons, we hold that neither these regulations nor the underlying statutes give the Department such power.

The regulations do not expressly authorize the Department to limit the number of counties from which a landfill may receive solid waste. Moreover, it is a well-established principle of administrative law and procedure that an agency cannot promulgate rules and regulations arrogating power greater than that authorized in the enabling legislation. Nonetheless, we must address the rules the Board cites as authority. First, Rule 1200–1–7–.04(2)(k)1 provides that a landfill may accept "only those solid wastes it is allowed to manage." This phrase refers to *types* of solid waste, rather than *origin* of the waste.

Second, Rule 1200–1–7–.04(9)(c)6 provides that a permit applicant must describe "the type and anticipated volumes of solid waste to be disposed of and the sources which generate the waste (including a description of the rural and/or urban service areas if applicable)." This language is not an affirmative grant of power to the Department to do anything; it is simply an item of information which a permit applicant must supply to the Department as it considers the landfill permit application. Furthermore, the term used in Rule 1200–1–7–.04(9)(c)6 "rural and/or urban service areas," is a concept different from "service area" stated in terms of a list of counties.

■ The Board argues that Rule 1200–1–7–.04(9)(c)6, by implication, allows service area restrictions to be placed in the permit because statements provided in the application become part of the permit operation plan. We find this argument unconvincing because Rule 1200–1–7–.04(9)(c)6 also requests information regarding volume of waste (a more relevant piece of information), but no such limitation exists in Sanifill's permit. While having the power to act does not mandate action, we find that in the case of regulations affecting private business, every effort must be made to apply regulations consistently and fairly. Thus, if information submitted in the application regarding the operating plan becomes part of the permit, all such information should become part of the permit.

The statutes at issue do not provide implicit power to impose service area restrictions in the permit. It is true that, under the statutes, the Department has the implicit power to create rules and regulations as necessary to control *features* of the construction, operation and maintenance "which do or may affect the public health and safety or the quality of the environment and which do or may affect the proper processing and disposal of solid wastes." Tenn.Code Ann. §§ 68–211–105(a), –107(a). We hold, however, that the service area is not such a feature. The finding by the Chancery Court and the Board that service area is a "feature" because "it essentially determines the quality and volume of waste that goes into the landfill" is unsupported by substantial and material evidence and is arbitrary and capricious.

As precisely demonstrated by Sanifill's circumstances, the service area bears no necessary correlation to the amount of waste the landfill will receive: that is, the landfill may receive none of the waste, some of the waste, or all of the waste from the area. Furthermore, the total amount of waste generated in an area is not static, so the service area does not even determine the maximum amount of waste which could be received, as the Board argues. Nor does the service area necessarily determine the quality of waste. Within a county, there is likely to be all kinds of

waste, including special and hazardous wastes. While the statutes at issue provide fairly broad powers to the Department to regulate landfills, there must be a rational relationship between the regulation imposed and the legitimate goals of the empowering statutes. We find no rational relationship between the service area and the amounts or quality of waste received; hence, there is no essential relationship between service area and the legitimate goals of protecting the public health and environment.

The Board contends that this holding jeopardizes the Department's other regulations. We have not gone that far. Our holding is that the service area is not a *feature* of the construction, operation, or maintenance of a landfill. However, type of waste, volume of waste, liners, leachate collection and removal systems, and ground water monitoring systems are *features* and, as such, are subject to regulation under the Act.

For all the foregoing reasons, we find that the statutes and regulations contain no express or implied authority for the Department to restrict service areas. Accordingly, the judgment of the Court of Appeals is affirmed as modified.

ANDERSON, C.J., and DROWOTA, REID and WHITE, JJ., concur.