# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### June 14, 2000 Session

## TENNESSEE MEDICAL ASSOCIATION, ET AL. v. TENNESSEE BOARD OF DENTISTRY, ET AL.

### An Appeal from the Chancery Court for Davidson County
### No. 98-2709-II    Carol L. McCoy, Chancellor

---

### No. M1999-02279-COA-R3-CV - Filed July 25, 2001

---

This is an appeal of an administrative decision involving the Tennessee Dental Practice Act. A licensed dentist petitioned the Tennessee Board of Dentistry to declare that he had the right under his dental license to perform various cosmetic procedures involving the face and neck, such as face lifts and nose jobs. The petition was granted and the Board of Dentistry issued a declaratory order that the petitioning dentist could perform such cosmetic procedures. The Appellees, including the Tennessee Medical Association, petitioned the Chancery Court to review the Board of Dentistry's decision. The Chancery Court reversed the Board of Dentistry's decision, finding that the Board had improperly expanded the practice of dentistry beyond what the legislature intended and that its decision was not supported by substantial and material evidence. On appeal, we affirm, finding that the Board's decision was contrary to the Dental Practice Act.

### Tenn. R. App. P. 3; Judgment of the Chancery Court Affirmed

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Parks T. Chastain, Tisha R. Zello, Nashville, Tennessee, for the appellant, William L. Hunter, III.

David L. Steed, Marc E. Overlock, Nashville, Tennessee, for the appellees, Tennessee Medical Association, Dwayne Fulks, M.D., and Stephen Pratt, M.D.

Paul G. Summers, Attorney General and Reporter, Michael E. Moore, Solicitor General, and Michelle Hohnke Joss, Assistant Attorney General, for the appellee, Tennessee Board of Dentistry.

Raymond G. Prince, John R. Hellinger, Nashville, Tennessee, Harvey M. Applebaum, Joan L. Kutcher, Keith A. Noreika, Washington, D.C., for the *amici curiae*, Tennessee Dental Association, Tennessee Society of Oral and Maxillofacial Surgeons, and American Association of Oral and Maxillofacial Surgeons.

# OPINION

This is an appeal of an administrative decision involving the Tennessee Dental Practice Act. William L. Hunter, III, D.D.S., ("Dr. Hunter") is a licensed dentist practicing in Maury County, Tennessee. Dr. Hunter is a specialist in "oral and maxillofacial surgery." He is not a licensed physician. In March 1996, Dr. Hunter filed a petition with the Tennessee Board of Dentistry ("Board") seeking a declaratory order, pursuant to Tennessee Code Annotated § 4-5-223(a) (1998). Dr. Hunter's petition sought an order from the Board declaring:

> 1) That the performance of facial and/or head and neck cosmetic surgery constitutes the practice of oral and maxillofacial surgery, a specialty of dentistry. 2) That the performance of these procedures including, but are [sic] not limited to, blepharoplasty, rhytidectomy, rhinoplasty, otoplasty, liposuction, chemical peel, dermabrasion, and removal and reconstruction of benign and malignant lesions, constitute the practice of oral and maxillofacial sugery [sic], a specialty of dentistry. 3) That the performance of these procedures constitute [sic] the practice of dentistry under the Tennessee Dental Practice Act.

Dr. Hunter asked the Board to issue an order stating that he could perform procedures such as: 1) blepharoplasty, or "eye lift"; 2) rhytidectomy, or "face lift"; 3) rhinoplasty, or "nose job"; 4) otoplasty, a procedure in which the ears are "tacked" back so they do not protrude excessively from the head; 5) liposuction, a surgical fat-removal procedure; 6) chemical peel, a procedure in which facial skin is burned with caustic chemicals and allowed to heal; 7) dermabrasion, a procedure in which facial skin is scrubbed with abrasive materials; and 8) the "esthetic reconstruction" of benign and malignant lesions, such as moles, anywhere on the head and neck. For ease of reference, these procedures will be referred to as "cosmetic procedures."

Prior to filing the petition, Dr. Hunter applied for privileges at Maury Regional Medical Center to perform these cosmetic procedures. The hospital denied his request, stating that Dr. Hunter lacked residency or fellowship training, that his performance of these cosmetic procedures would violate the local standard of care, and that it would expose the hospital to undue liability. In his petition before the Board of Dentistry, Dr. Hunter acknowledged that he routinely performs these cosmetic procedures in his office.

Initially, in May 1996, the Board ruled that the word "esthetic," appearing in the definition of "oral and maxillofacial surgery" in the Rules of the Tennessee State Board of Dentistry, was broad

enough to encompass such cosmetic procedures.[1]  The Rules of the Board of Dentistry define "oral and maxillofacial surgery" as:

> That specialty branch of dentistry which includes the diagnosis, surgical and abjunctive treatment of diseases, injuries and defects involving both the functional and *esthetic* aspects of the hard and soft tissues of the oral and maxillofacial regions.

*See* Rules of the Tennessee State Board of Dentistry, General Rules, Chap. 0460-1-.01(14) (April 2000) (emphasis added).  Subsequently, in June 1996, Dr. Hunter filed a petition with the Davidson County Chancery Court for review of the Board's decision, pursuant to Tennessee Code Annotated § 4-5-322(b)(1) (1998).  Dr. Hunter asserted in his petition that the Board failed to address the issue of whether he could perform such cosmetic procedures within his license as a dentist and his specialty certification as an oral and maxillofacial surgeon.  By agreement, Dr. Hunter's petition with the Chancery Court was remanded to the Board for further proceedings.

Meanwhile, in June 1996, several parties sought to intervene in Dr. Hunter's proceedings before the Board.  These parties were Dwayne Fulks, M.D., a plastic and reconstructive surgeon practicing in Columbia, Tennessee, Stephen Pratt, M.D., a plastic and reconstructive surgeon practicing in Nashville, Tennessee, and the Tennessee Medical Association ("TMA").  By agreement, Dr. Fulks, Dr. Pratt, and the TMA were permitted to intervene in the proceedings before the Board of Dentistry.

On May 14, 1998, the Board held a hearing on Dr. Hunter's petition.  At the hearing, Dr. Fulks testified that he performs the cosmetic procedures Dr. Hunter sought to perform, and that he is familiar with the risks involved in such procedures.  He testified that the procedures vary widely in scope and difficulty.  He noted that some of the procedures require general anesthesia.  In Dr. Fulks's opinion, the cosmetic procedures Dr. Hunter sought to perform do not involve the teeth, jaws, or associated structures.  Dr. Fulks asserted that the phrase "teeth, jaws, or associated structures" as used in the statutory definition of dentistry[2] is not synonymous with the "face and neck," as maintained by Dr. Hunter.  While the "face and neck" include the teeth, jaws, and associated structures, Dr. Fulks stated that the face and neck also contain "totally unrelated" structures such as the spinal cord, the carotid arteries, the eyes, and the brain.  Dr. Fulks testified that the phrase "associated structures" as used in the statute meant "things that are either attached to the mandible [lower jaw] or to the tooth bearing portion of the maxilla [upper jaw] . . . as well as things that attach to that and cross it at some point in time."  Dr. Fulks stated that while oral maxillofacial surgeons such as Dr. Hunter have routinely performed some cosmetic procedures, these procedures were performed only within the confines of the teeth, jaws, or associated structures.  Dr. Fulks

---

[1] There is no transcript of the proceedings leading to the Board's first declaratory order in the record.

[2] The practice of dentistry is defined as the diagnosis and treatment of "any disease, pain, deformity, deficiency, injury or physical condition of the human teeth or jaws, or associated structures."  *See* Tenn. Code Ann. § 63-5-108(a)(1) (Supp. 2000).

testified that, in his opinion, only licensed physicians should perform the cosmetic procedures at issue.

Dr. J.W. Hudson, D.D.S., an oral maxillofacial surgeon and the program director of the oral maxillofacial residency program at the University of Tennessee-Knoxville, testified on behalf of Dr. Hunter. Dr. Hudson, like Dr. Hunter, is a licensed dentist, not a physician, and holds a specialty certificate in oral and maxillofacial surgery. Dr. Hudson stated that the term "maxillofacial" includes "the face and its soft tissue component as well as the bony components." He asserted that "when we talk about maxillofacial we talk about everything from the forehead down to essentially the Adam's apple because all of that is interrelated and we can't just dissect one out and look at one little particular spot." Dr. Hudson noted that the procedures Dr. Hunter sought to perform were taught as part of the oral maxillofacial residency program at the University of Tennessee and that he, Dr. Hudson, also performs the procedures. Dr. Hudson acknowledged that, in the oral surgery program at Vanderbilt University Medical School, graduates of the oral surgery program are licensed physicians, but asserted that the structure of Vanderbilt's oral surgery program does not reflect an overall trend in oral surgery programs.

Dr. Hunter testified at the hearing on his own behalf. Dr. Hunter said that, during his dental residency at the University of Tennessee, he had performed rotations in anesthesia, general surgery, general pathology, and practice management. He acknowledged that, during his dental residency, he did not perform any of the cosmetic procedures at issue, but asserted that he now routinely performs them. Dr. Hunter testified that he had been performing such "purely cosmetic" procedures in his office for the past six to eight years. He explained why he now sought a declaratory order from the Board:

> I would like the Board to clarify their previous ruling to state that cosmetic procedures of the head and neck are part of the practice of dentistry and subspecialty of oral surgery in the State of Tennessee. I want this to be accomplished so that I won't have to be back before you again with someone else challenging me again.

Dr. Hunter acknowledged that he advertised his services for such cosmetic procedures in the local yellow pages under the physician's section. He said that he did so because he thought it best to advertise where others performing the same or similar services advertise, and that he did not intend to represent himself as a licensed physician. He acknowledged that some of the cosmetic procedures involve putting a patient under general anesthesia for up to eight hours. When asked how he administered the anesthesia, he responded that "I have a nurse anesthetist to provide anesthesia or I do it myself."

Dr. Hunter said that he had completed between four and five hundred hours of "continuing education" training in performing the cosmetic procedures, attending programs at, among others, Louisiana State University, the University of Michigan, the University of Pennsylvania, the University of Tennessee, and the University of Texas. He said that he had hospital privileges to

perform oral maxillofacial surgery at Maury Regional Medical Center, and that he shared responsibility for head and neck trauma patients with physicians such as plastic surgeons.

The intervenors offered deposition testimony from Cathleen Pettepher, Ph.D., an anatomy instructor at Vanderbilt University Medical Center. Dr. Pettepher testified that the "jaw" consisted of the lower jaw, or mandible, and the upper jaw, or maxilla. She stated that the structures "associated" with the jaw were the teeth, the muscles that move the jaw in talking and chewing, the tongue, and the nerves and arteries that supply the muscles and the teeth. Dr. Pettepher acknowledged that the term "oral maxillofacial" is broader than the word "oral," and that "oral maxillofacial" includes the mouth and the areas of the cheek up to the bottom of the eye socket. She said that the definition of "associate" in Stedman's Medical Dictionary, namely, "any item or individual grouped with others by some common factor," is recognized as authoritative. When asked whether all the structures of the face are associated with each other, she acknowledged that, to a certain extent, they are associated:

> Well, you begin with the foundation of the bones and there are several different bones that come together to actually form the bones of the face and your skull appearance. Laid on top of all those different bones of course would be the various muscles that allow for movement of the jaw, movement of your eyelids, flaring of your nostrils, et cetera. Those are muscles of facial expression as well as muscles of mastication, which means chewing, so they would all be considered aspects of your face.

After the proof was concluded, on May 15, 1998, the Board issued a second declaratory order. The second order states:

CONCLUSIONS OF LAW

> The Board has determined that Dr. Hunter is a licensed dentist specializing in oral and maxillofacial surgery and can perform the aforementioned surgical procedures within the scope of his licensure.

REASONS FOR DECISION

> The Board makes this declaratory order in order to provide for the public welfare for the residents of Tennessee that they receive adequate and appropriate care from the dental community. The definition in the Rules of the Dental Practice Act may be interpreted that the definition of the oral maxillofacial specialty as one which permits cosmetic procedures relating to the full facial complex.

Therefore, the second declaratory order issued by the Board stated that Dr. Hunter could, within the scope of his license, perform the cosmetic procedures.

Subsequently, on September 4, 1998, the intervenors filed a petition in the Davidson County Chancery Court for review of the Board's decision, pursuant to Tennessee Code Annotated § 4-5-322(b)(1). The petition asserted that the Board's decision was in violation of the statutes governing the practice of dentistry, was in excess of its statutory authority, was arbitrary and capricious, was an abuse of discretion, and was unsupported by substantial and material evidence.

On March 12, 1999, the Attorney General filed a response on behalf of the Tennessee Board of Dentistry, asserting that there was no substantial and material evidence in the administrative record to support the Board's conclusion. Thus, in proceedings before the Chancery Court, the Board of Dentistry advocated reversal of its own decision. The Attorney General's response on behalf of the Board states that the Board's declaratory order "extends the practice of dentistry beyond its statutory scope of practice under Tenn. Code Ann. § 63-5-108(a) and raises serious public health and safety issues."

On September 10, 1999, the Chancery Court entered an order reversing the Board's decision. The Chancery Court order states that the Board's decision violates Tennessee Code Annotated § 63-5-108. It reasons that the specialty of "oral maxillofacial surgery," provided for in section 63-5-112, must fall within the scope of dentistry as defined in Tennessee Code Annotated § 63-5-108, and that the Board's order "impermissibly expands" the scope of dental practice to areas outside the teeth, jaws, and associated structures. In a separate note, the Chancery Court stated that the Board exceeded its authority in promulgating Rule 0460-1-.01(14), by enlarging the specialty of "oral maxillofacial surgery" to "oral *and* maxillofacial surgery."

Subsequently, the Attorney General filed a motion on behalf of the Board to alter or amend the Chancery Court's order. It argued that Tennessee Code Annotated § 63-5-112, which grants the Board authority to certify specialists in "oral surgery and/or oral maxillofacial surgery" is a miscodification of the legislation enacted by the General Assembly, which states that the Board has the authority to certify specialists in "oral surgery and/or oral *and* maxillofacial surgery." *See* 1981 Tenn. Pub. Acts 99 (emphasis added). While the Attorney General sought an amendment of the Chancery Court order regarding the Board's promulgation of Rule 0460-1-.01(14), the Attorney General did not seek to change the ultimate result reached by the Chancery Court. Dr. Hunter filed a motion to alter or amend as well, but asserted that the corrected statute should alter the outcome reached by the Chancery Court.

On November 3, 1999, the Chancery Court entered an amended order, reflecting the corrected statute, but without affecting its reversal of the Board's decision. The Chancery Court stated that the Board's decision to allow "cosmetic procedures to the 'full facial complex,' without defining what comprises this area in its finding of fact or conclusions of law, impermissibly expands the scope of dental practice to areas outside the teeth, jaws and associated structures." The Chancery Court's amended order states that the Board's decision was not supported by substantial and material evidence, and notes that the testimony of Dr. Pettepher was "persuasive and reasonable." From this order, Dr. Hunter now appeals.

On appeal, Dr. Hunter raises four issues. He argues that the Chancery Court misconstrued the Board's order because the Board's order did not allow cosmetic procedures to the "full facial complex," but merely concluded that Dr. Hunter was permitted to perform the cosmetic procedures that he requested within the scope of his license. Second, Dr. Hunter argues that the Board did not "impermissibly expand" the scope of dentistry under Tennessee Code Annotated § 63-5-108 because the term "associated structures" is not ambiguous and there was sufficient evidence for the Board to conclude that cosmetic procedures to the "head and neck" constitute treatment to the teeth, jaws, and "associated structures." Third, he argues that the Chancery Court applied an incorrect standard of review to the agency's decision, and that there was substantial and material evidence to support the Board's decision. Finally, Dr. Hunter argues that the Board did not have to define "full facial complex" in order to meet the requirements of the Uniform Administrative Procedures Act.

As in the lower court, the Attorney General argues on appeal that the decision of the Chancery Court, reversing the decision of the Board of Dentistry, should be affirmed. The Tennessee Dental Association, the Tennessee Society of Oral and Maxillofacial Surgeons, and the American Association of Oral and Maxillofacial Surgeons have filed an *amici curiae* brief in this matter, arguing that the Chancery Court's decision should be reversed and the Board's action upheld. The *amici* brief argues that reversal of the Board's decision is a disservice to patients needing emergency trauma care and facial reconstruction, who often depend on oral maxillofacial surgeons to perform such procedures.

Judicial review of an agency decision is governed by Tennessee Code Annotated § 4-5-322(h) (1998), which states:

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
>
> (5) Unsupported by evidence which is both substantial and material in the light of the entire record.
>
> In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not

substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

*See also Sanifill of Tennessee, Inc. v. Tennessee Solid Waste Disposal Control Bd.*, 907 S.W.2d 807, 809-10 (Tenn. 1995). In reviewing the agency's decision, the Chancery Court is confined to the record before the agency. *See* Tenn. Code Ann. § 4-5-322(g); *Sanifill*, 907 S.W.2d at 810. Additionally, the record certified to the Chancery Court constitutes the record on appeal to this Court. *See* Tenn. Code Ann. § 4-5-323(b).

The agency's findings of fact are reviewed under a "substantial and material evidence" standard, and do not receive *de novo* review. *See Sanifill*, 907 S.W.2d at 810; *Southern Ry. Co. v. Tennessee Bd. of Equalization*, 682 S.W.2d 196, 199 (Tenn. 1984). "However, the 'substantial and material evidence' standard in Tenn. Code Ann.§ 4-5-322(h)(5) requires a searching and careful inquiry that subjects the agency's decision to close scrutiny." *Sanifill*, 907 S.W.2d at 810 (citing *Wayne County v. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988)).

However, the agency's interpretation of a statute is a question of law. *See Sanifill*, 907 S.W.2d at 810; *Beare Co. v. Tennessee Dep't of Revenue*, 858 S.W.2d 906, 907 (Tenn. 1993). Such a question of law is reviewed under a *de novo* standard. *See Ridings v. Ralph M. Parsons, Co.*, 914 S.W.2d 79, 80 (Tenn. 1996).

Dr. Hunter argues first that the Chancery Court misconstrued the Board's declaratory order as allowing for cosmetic procedures to the "full facial complex." The Board states in its declaratory order that "[t]he definition in the Rules of the Dental Practice Act may be interpreted that the definition of the oral maxillofacial specialty as one which permits cosmetic procedures relating to the full facial complex." The order of the Chancery Court, reversing the Board's declaratory order, states:

> The Board determined that the surgical procedures listed in Dr. Hunter's Petition for Declaratory Order were within the scope of his licensure. The Board reasoned "[t]he definition in the Rules of the Dental Practice Act may be interpreted that the definition of the oral maxillofacial specialty as one which permits cosmetic procedures relating to the full facial complex." The Board did not elaborate on the meaning of "full facial complex" in its declaratory order.

Clearly, the Board's declaratory order "permits cosmetic procedures relating to the full facial complex," and this was understood by the Chancery Court. This argument is without merit.

Dr. Hunter next argues that the term "associated structures," as used in Tennessee Code Annotated § 63-5-108, is not ambiguous, and that the Chancery Court should not have reversed the Board's decision because it was supported by "substantial and material evidence." Under Tennessee Code Annotated § 4-5-322(h), the agency's decision may be reversed or modified if it is "[i]n violation of constitutional or statutory provisions; . . . [a]rbitrary or capricious or characterized by

abuse of discretion or clearly unwarranted exercise of discretion; or [u]nsupported by evidence which is both substantial and material in the light of the entire record." Therefore, if the agency's decision is contrary to statutory provisions, it may be reversed or modified, regardless of whether it is supported by substantial and material evidence.

Tennessee Code Annotated § 63-5-108 defines the scope of dentistry and the areas in which a dentist may lawfully practice. The specialty of "oral and maxillofacial surgery,"[3] authorized in Tennessee Code Annotated § 63-5-112 (1998), must fall within the scope of the practice of dentistry. Thus, to determine whether the Board's decision is contrary to statutory provisions, we must examine whether the Board may declare that a dentist and specialist in "oral and maxillofacial surgery" is permitted to perform such cosmetic procedures under section 63-5-108. Section 63-5-108(a)(1) states "[a]ny person is deemed to be practicing dentistry who: (1) Diagnoses, prescribes for or treats any disease, pain, deformity, deficiency, injury or physical condition of the human teeth or jaws, *or associated structures*." (Emphasis added.) Dr. Hunter argues that the phrase "associated structures" indicates that the legislature sought to include the cosmetic procedures at issue within the scope of dentistry.

When construing statutes, the role of the court is to ascertain and give effect to legislative intent. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998). To determine legislative intent, the court should look to the natural and ordinary meaning of the language used in the statute and should not use a forced or strained construction of the statute's language. *Id.*

The meaning of "associated structures" is not so readily apparent as "teeth or jaws." In determining whether "associated structures" includes all the components of the face and neck, as Dr. Hunter advocates, the reviewing court is not required to give deference to the Board's decision. *See Tennessee Medical Ass'n v. Board of Registration in Podiatry*, 907 S.W.2d 820, 825 (Tenn. Ct. App. 1995). In *Podiatry*, the Court held that the issue of whether the term "foot" included the ankle, as "foot" is used in the statute defining the practice of podiatry, was a matter of statutory interpretation that did not require the expertise of the Podiatry Board. *Id.* Likewise, in this case, the issue is *whether the legislature intended* to include cosmetic procedures to all components of the face and neck within the practice of dentistry in utilizing the phrase "teeth or jaws, or associated structures" in Tennessee Code Annotated § 63-5-108(a)(1).

In this case, the statute defines the practice of dentistry as the diagnosis and treatment of "any disease, pain, deformity, deficiency, injury or physical condition of the human teeth or jaws or associated structures." *See* Tenn. Code Ann. § 63-5-108(a)(1). Dr. Hunter's specialty, oral and maxillofacial surgery, is a specialty that must fit within this definition of dentistry.

---

[3]The parties do not dispute that Tennessee Code Annotated § 63-5-112 is miscodified and should allow the Board to certify specialists in "[o]ral surgery and/or oral and maxillofacial surgery."

In the order that is the subject of this appeal, the Board of Dentistry notes that Dr. Hunter sought to perform blepharoplasty (eye lifts), rhytidectomy (face lifts), rhinoplasty (nose jobs), otoplasty (tacking back ears), liposuction (removal of fat), chemical skin peels, dermabrasion (abrasion of skin), and the "esthetic reconstruction" of both benign and malignant lesions anywhere on the head or neck. The Board declared that, within his license as a dentist, Dr. Hunter "can perform the aforementioned surgical procedures. . . ." There were no restrictions placed on Dr. Hunter's ability to perform such procedures.

As it is written, the Board's declaratory order appears to be a blanket authorization for Dr. Hunter, a dentist, to advertise and perform in his office eye lifts, nose jobs, face lifts and other such procedures normally performed by a licensed physician specializing in plastic surgery. The *amici* brief rightly notes that oral and maxillofacial surgeons such as Dr. Hunter frequently must participate in treating patients who have suffered facial trauma or other problems that necessitate extensive reconstructive surgery, and that there is not always a "bright line" distinction in the responsibilities of a physician who is a plastic surgeon and a dentist who is an oral and maxillofacial surgeon such as Dr. Hunter. We recognize that this is necessary and that an oral and maxillofacial surgeon may perform some aspects of these cosmetic procedures in some instances. We hold merely that the definition of dentistry contained in Tennessee Code Annotated § 63-5-108(a)(1) does not blanketly authorize a dentist, even an oral and maxillofacial surgeon, to perform cosmetic procedures such as face lifts and nose jobs. Consequently, we affirm the Chancery Court's reversal of the decision of the Board of Dentistry. We do not hold that an oral and maxillofacial surgeon such as Dr. Hunter may never perform any aspect of such cosmetic procedures, nor do we address the parameters under which such procedures may be performed. We hold only that the broad authorization contained in the Board's declaratory order is contrary to Tennessee Code Annotated § 63-5-108(a)(1). The remaining issues raised on appeal are pretermitted.

The decision of the Chancery Court is affirmed. Costs are taxed to the Appellant, William L. Hunter, III, D.D.S., and his surety, for which execution may issue if necessary.

_____
HOLLY KIRBY LILLARD, JUDGE

-10-